**Tritt, Administrator**
**v.**
**Judd's Moving & Storage, Inc.**
*[Cite as 5 AOA 264]*

*Case No. 89AP-817*
*Franklin County, (10th)*
*Decided August 9, 1990*

*Dale K. Perdue, Clark, Perdue & Roberts Co., L.P.A., for Appellants.*

*Michael R. Henry and Charles E. Brown, Crabbe, Brown, Jones, Potts & Schmidt, for Appellees.*

WHITESIDE, J.

Plaintiffs, William R. Tritt, Jr., administrator of the estate of William Robert Tritt, III, and Jason Tritt, appeal from a judgment of the Franklin County Common Pleas Court rendered in favor of defendant, Judd's Moving & Storage, Inc., on plaintiffs' claims for wrongful death and personal injuries resulting from an automobile accident. Six assignments of error are raised, as follows:

"I. The trial court erred in permitting Defendant's accident reconstructionist to testify at trial as to opinions not disclosed during discovery and which were, in fact, based upon an out-of-

court experiment conducted by the expert after the trial had commenced.

"II. The trial court erred in permitting Defendant's accident reconstructionist to testify at trial concerning an out-of-court experiment, because the circumstances of the experiment were so dissimilar to the circumstances of the accident in question as to prejudicially mislead the jury on an issue of material fact.

"III. The trial court erred in refusing to charge the jury with an instruction on common law negligence when such an instruction was dictated by the evidence and requested in writing by Plaintiffs.

"IV. The trial court erred in refusing to charge the jury with the definition of 'discernibility' enunciated by the Ohio Supreme Court in the case of *McFadden v. Elmer C. Breuer Transp. Co.* (1952), 156 Ohio St. 430, when such definition was necessary for the jury's determination of an ultimate issue in the case.

"V. The trial court erred in refusing to permit Plaintiffs to use a scale model of the accident scene during the testimony of Dr. Bernard Abrams, an expert witness on the subject of night vision, when Dr. Abrams testified that the use of the model would assist him in explaining his opinions to the jury.

"VI. The trial court erred in refusing to permit Dr. Bernard Abrams to testify as to whether the existence of reflective triangles would have enhanced the discernibility of Defendant's semi tractor under the conditions which existed at the time and place of the occurrence in question."

The facts involved are largely undisputed. On the morning of February 12, 1987, plaintiff Jason Tritt, while driving himself, his brother, William Tritt, III, and two friends to high school, collided with the rear of defendant's truck. Defendant is a moving company, and on the date of the accident, had been preparing to move the contents of a house located on the west side of State Route 605 in Delaware. Defendant had backed a yard tractor attached to an empty semitrailer into the driveway of the house to be moved, perpendicular to the southbound lane of Route 605, and had parked a Ford 9000 "cab over" semi tractor, with no trailer attached, mostly in the northbound lane of Route 605. Apparently, the plan was to load the semitrailer with the house contents and then attach the loaded trailer to the Ford tractor for purposes of transporting the contents to their destination.

Defendant arrived with its two trucks at the house between 7:00 and 7:05 a.m. The Ford tractor was parked with its right wheels somewhat off the edge of the road, but with the rest of the tractor occupying Route 605. The morning was generally described by witnesses as dark and misty. Most witnesses who had driven by the accident scene either shortly before or after the collision testified that they were driving with their headlights on and their windshield wipers engaged, at least intermittently. Witnesses also testified that the Ford tractor had no flashers or lights engaged on the back of the truck, although defendant's employees, who had driven the two trucks, testified that the flashers and lights were clean and being used. Defendant's employees were wearing dark brown clothing. The area of the road where the accident occurred was lined on the west side by foliage and large trees and on the east side by small trees.

At approximately 7:05 a.m., the car driven by plaintiff Jason Tritt slammed into the back of defendant's truck, resulting in severe injuries to him and a passenger in the backseat. The passenger in the front seat and William Tritt, III, Jason's brother, who was riding in the back seat, were killed.

Plaintiffs William Tritt, Jr., the father of Jason and the decedent, and Jason Tritt, subsequently brought this action for wrongful death, personal injuries and medical expenses against defendants Judd's Moving & Storage, Inc. ("Judd's"), Leaseall Corporation, and four individuals. Claims against all but Judd's were dismissed throughout the course of this action, and thus Judd's is the only defendant involved in this appeal.

Following extensive discovery, trial was had to a jury, which subsequently rendered a unanimous verdict in favor of defendant. From that decision, plaintiffs filed the instant appeal.

By their first and second assignments of error, plaintiffs contend that the trial court erred in allowing defendant's expert witness, Dr. Bookwalter, first, to testify concerning the distance from which the truck's taillight would have been visible and second, to testify as to an out-of-court experiment he conducted relevant to the tail light testimony. Both assignments of error have merit.

Plaintiffs argue, in regard to their first assignment of error, that they were unfairly surprised by Dr. Bookwalter's opinions at trial as to the distance from which the taillight on the Ford tractor was probably visible to Jason Tritt

prior to the collision. Dr. Bookwalter, defendant's expert on accident reconstruction, had previously testified during deposition primarily about the speed of the Tritt vehicle when it collided with the tractor, and had also stated that he had no qualifications or training as an illuminating engineer. Additionally, when asked during discovery about Dr. Bookwalter's area of expertise and anticipated subjects of testimony, defendant did not indicate that the testimony would include an opinion about the taillight of defendant's truck.

Defendant argues that Bookwalter's testimony was admissible to rebut the "surprise" testimony of plaintiffs' expert, Dr. Abrams, also an accident reconstructionist. Defendant contends that, during his deposition, Abrams stated that he had not performed any tests on the Ford truck, or its taillight. However, during trial, Abrams unexpectedly testified as to an experiment he had performed on a taillight between the taking of his deposition and the time of trial. Defendant also contends that Abrams materially changed his testimony at trial by stating his *opinion* that defendant's truck was not discernible when his deposition testimony indicated that the nondiscernibility of the truck was an *assumption* Abrams used in forming his ultimate opinion. It is defendant's argument that the new testimony of Bookwalter was proper rebuttal to the arguably new testimony presented by Abrams.

The elimination of surprise is one of the central purposes of the Rules of Civil Procedure. *Jones v. Murphy* (1984), 12 Ohio St. 3d 84. In furtherance of that goal, Civ. R. 26(E)(1)(b) requires a party who has responded to a discovery request to supplement his response seasonably as to any question directly addressed to "the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify." Ohio courts have consistently held that the exclusion of expert testimony is a proper sanction for the violation of Civ. R. 26(E)(1)(b). See *Jones, supra; Shumaker v. Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St. 3d 367; *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83; *Jackson v. Booth Memorial Hosp.* (1988), 47 Ohio App. 3d 176; and Civ. R. 37.

Defendant contends that the unexpected testimony of Abrams justified, and even made necessary, Bookwalter's unexpected testimony. Essentially, defendant argues that plaintiffs failed to provide defendant with adequate notice of the changes in Abrams' answers. However,

Civ. R. 26(E)(1)(b) mandates supplementation of the subject matter on which an expert witness is expected to testify. *Jackson, supra,* at 178-179. By its terms, the rule does not require a party to give notice as to each and every nuance of an expert's opinion. Defendant was fully aware that Abrams would testify in regard to the lack of illumination at the time and site of the accident, and the substance of that testimony did not change between the deposition and the trial.

Moreover, defendant argues that the disputed evidence was proper as "rebutting evidence" as that term is defined in *Nickey v. Brown* (1982), 7 Ohio App. 3d 32. In *Nickey,* the court utilized the definition of rebutting evidence found in 31 Corpus Juris Secundum 818, Evidence, Section 2, which reads as follows:

"Rebutting evidence is that which is given to explain, repel, counteract, or disprove facts given in evidence by the adverse party. It is that evidence which has become relevant or important only as an effect of *some evidence introduced by the other side.* *** " (Emphasis added.)

Most important is the fact that Abrams' testimony concerning the tail light test he performed was introduced only as a result of cross-examination by defendant's counsel and was not mentioned during direct examination by plaintiffs' counsel. Additionally, it was made clear on redirect that Abrams did not rely on the result of the taillight test in forming his opinion. Thus, although Bookwalter's testimony arguably did serve to "counteract" some of Abrams' testimony on cross-examination in regard to the taillight, that alone did not make Bookwalter's surprise testimony admissible despite failure to comply with discovery requirements.

Finally, even if defendant was surprised by changes in Abrams' testimony, Bookwalter's testimony concerning the tail light experiment was not thereby rendered admissible despite the discovery-rule violations. The Rules of Civil Procedure were not designed to allow parties to correct self-created, alleged evidentiary "wrongs" by introducing otherwise inadmissible expert testimony of their own. See Civ. R. 37(B). There simply was no justification for defendant's waiting until after commencement of the trial to have the expert conduct the alleged experiment, the delay having the sole effect of avoiding compliance with discovery requirements and A to inject surprise evidence which plaintiff would have no opportunity to rebut. Even if the testimony were otherwise admissible, plaintiffs -object, by their second assignment of error, to the admission of

Bookwalter's testimony regarding his tail light experiment because the conditions surrounding the accident and the conditions under which - Bookwalter conducted his experiment were so dissimilar as to be so misleading and confusing as to require exclusion of the testimony.

Out-of-court experiments are governed by the syllabus rule of *St. Paul Fire & Marine Ins. Co. v. Baltimore & Ohio Rd. Co.* (1935), 129 Ohio St. 401, which states in part:

"1. Evidence of experiments performed out of court, tending to prove or disprove a contention in issue, is admissible if there is a substantial similarity between conditions existing when the experiments are made and those existing at the time of the occurrence in dispute; dissimilarities, when not so marked as to confuse and mislead the jury, go to the weight rather than the admissibility of the evidence.

"2. The admission or rejection of evidence as to such experiments is a matter peculiarly within the discretion of the trial judge, and when such discretion has not been palpably abused reviewing courts will not interfere."

Where the trial court has abused its discretion in finding a substantial similarity between the conditions surrounding the initial occurrence and the conditions surrounding the experiment, this court must reverse the decision. *Bush v. Hoelker* (Oct. 12, 1989), Franklin App. No. 89AP-185, unreported (1989 Opinions 3953, 3959).

In the instant case, the trial court admitted into evidence Bookwalter's testimony concerning the out-of-court experiment he had performed on a taillight. The experiment basically consisted of Bookwalter's placing a new tail light assembly which was lighted by a twelve-volt power supply on a stand approximately eighteen inches high at the site of the accident, and then walking south on the road to the point where the light was no longer visible. The distance between the tail light and that point 'was nine hundred sixty-two feet.

A few similarities do exist between some of the circumstances at the time of the accident and the circumstances under which Bookwalter performed his experiment. The taillight utilized by Bookwalter was one made for a 1977 Ford 9000 tractor, the type of tractor involved in the accident. Bookwalter conducted the experiment approximately one-half hour before sunrise (the accident had occurred approximately one-half hour before sunrise). Bookwalter used a twelve-volt battery, similar to the power source found in cars and trucks. The experiment took place in the same location as the accident.

Notwithstanding those similarities, the experiment was not performed under conditions substantially similar to the conditions at the time of the accident so as to permit its admission into evidence. Bookwalter performed the experiment at approximately 5:30 a.m., in June although the accident occurred in February at approximately 7:05 a.m. A half-hour before sunrise in June is ordinarily lighter than the same time in wintery February. It does not require an expert to recognize the difference between winter mornings and late spring or summer mornings. The sky was not overcast at the time of the experiment and there was no mist, in contrast to the cloudy, misty conditions at the time of the accident.

Obvious dissimilarities also existed in the taillights. Bookwalter used a new, clean taillight assembly on a stand set eighteen inches high, while the taillight on the Ford tractor was scratched and pitted and had been subjected to road and weather conditions including the mist. There was no evidence of the age of the tail light on the tractor nor of the distance from the road to the taillight affixed to the tractor. The size of the two taillights differed, as did the power sources which activated them. Finally, an irreconcilable distinction lies in the fact that Bookwalter was *retreating* from the taillight, watching it as he retreated with full awareness of its existence. The car driven by plaintiff Jason Tritt *approached* the tractor, and the question was when would it first become perceptible. The differences are so "marked" as to be patently confusing and misleading to the jury.

We recognize that the admission of evidence concerning out-of court experiments is a matter within the discretion of the trial court. *Columbus v. Taylor* (1988), 39 Ohio St. 162; *McQueen v. Goldey* (1984), 20 Ohio App. 3d 41. However, in light of the vastly different circumstances of the out-of-court experiment conducted by defendant's expert, the trial court palpably abused its discretion by admitting testimony of the experiment into evidence since it was patently misleading and confusing because of the marked differences. Furthermore, any possible probative value of the evidence was overwhelmingly outweighed by its prejudicial nature. See Evid. R. 403(A); *Columbus v. Kasper* (Apr. 20, 1989), Franklin App. No. 88AP-606, unreported (1989 Opinions 1278, 1289-1290). Clearly, the impact of Bookwalter's statement that the taillight was visible to him from a

distance of over nine hundred feet was highly prejudicial on the issue of the discernibility of defendant's tractor. The conditions surrounding the experiment were substantially dissimilar to the conditions of the accident and, therefore, that evidence pertaining to the experiment was inadmissible. Accordingly, the first and second assignments of error are well-taken.

Plaintiffs' third and fourth assignments of error claim error in the trial court's refusal to give certain jury instructions. Plaintiffs had requested the court to instruct the jury on common-law negligence and on the definition of "discernibility" set out in *McFadden v. Elmer C. Breuer Transp. Co.* (1952), 156 Ohio St. 430.

Turning first to plaintiffs' requested jury instructions on common-law negligence, we agree with defendant that the Ohio Supreme Court set out the controlling law in *Eisenhuth v. Moneyhon* (1954), 161 Ohio St. 367. *Eisenhuth* states in paragraph three of the syllabus:

"Where there exists a legislative enactment commanding or prohibiting for the safety of others the doing of a specific act and there is a violation of such enactment solely by one whose duty it is to obey it, such violation constitutes negligence per se *** ."

*Eisenhuth* states further:

"'Where a specific requirement is made by statute and an absolute duty thereby imposed, no inquiry is to be made whether the defendant acted as a reasonably prudent man, or was in the exercise of ordinary care. In such a situation, the obligation and requirement has been fixed and established by law, and the conduct of any person which is violative of such specific statutory requirement is illegal and if it proximately results in injury to one to whom a legal duty is owed, the transgressor is liable for the resulting damage. In such case, the jury is not called upon to determine whether the conduct constituted negligence; it determines only whether the act prohibited was committed or the act required by law was omitted, as the case may be. The violator of such specific requirement of law is liable irrespective of the question as to whether his act is such as is deemed to meet and satisfy the test of ordinary or reasonable care which would be applied in the absence of such statutory definition and imposition of absolute duty, such as, for instance, the absolute and specific requirement as to headlights. *** '" *Id.* at 373-374, quoting *Swoboda v. Brown* (1935), 129 Ohio St. 512.

The trial court herein determined that defendant's negligence, if any, was premised exclusively on violation of a specific statute or code section and that a jury instruction on common-law negligence was, therefore, inappropriate. Specifically, the trial court instructed the jury that, if it found that defendant had violated R.C. 4511.66, 4513.03 or 4513.10 or Ohio Adm. Code 4901:2-5-05 or 4901:2-5-14, then it must find that defendant was negligent.[1]

It is conceded by the parties that the sections cited above imposed specific requirements. *Roszman v. Sammett* (1971), 26 Ohio St. 2d 94; reaffirming *Chesrown v. Bevier* (1920), 101 Ohio St. 282. Plaintiffs, however, relying on *Hood v. New York, Chicago & St. Louis Rd. Co.* (1957), 166 Ohio St. 529, argue that where special circumstances create a peculiarly hazardous situation, a court must also give a jury instruction on common-law negligence when requested. It is plaintiffs' argument that the environmental conditions at the time of the accident may have created such a peculiarly hazardous situation that the trial court erred by refusing to give the requested instruction on negligence.

*Hood* involved a collision at a railroad grade crossing, and we have found no published opinion applying that holding of *Hood* beyond the railroad crossing setting. See, e.g., *Stormont v. New York Central Rd. Co.* (1964), 1 Ohio App. 2d 414; *Matkovich v. Penn Central Transp. Co.* (1982), 69 Ohio St. 2d 210. Moreover, *Matkovich* recognized the specific dangers inherent in railroad crossings and held that a railroad generally has a duty of ordinary care to protect the safety of motorists, thus modifying and extending *Hood*. *Hood* does not apply to the situation here. Furthermore, it is difficult to conceive of any action in addition to those required by the statutes or rules that would have further reduced the hazard. Accordingly, the trial court did not commit prejudicial error in refusing to charge the jury on common-law negligence, and the third assignment of error is not well-taken.

By their fourth assignment of error, plaintiffs contend that the trial court committed reversible error by refusing to give the jury instruction defining "discernible" which plaintiffs requested. Pursuant to Civ. R. 51, plaintiffs had proposed in' writing the following instruction:

"It is the law of Ohio that a driver must not operate a vehicle at a greater speed than will permit him to bring it to a stop within the assured clear distance ahead. [R.C. 4511.21]. However, this law is not violated unless the object

stuck [sic] was reasonably discernible. *[Blair v. Goff-Kirby Co.* (1976), 49 Ohio St. 2d 5].

"The word 'discernible' means something more than visible. Visible means perceivable by the eye. Discernible means mentally perceptible or distinguishable--capable of being discerned by the understanding and not merely by the senses. *[McFadden v. Elmer C. Breuer Transp. Co.* (1952), 156 Ohio St. 430]. Although you may consider the size of the Defendant s truck in your determination, you may find that the Defendant's truck was not reasonably discernible regardless of its size. *[Blair v. Goff-Kirby Co.* (1976), 49 Ohio St. 2d 5].

"Therefore, if you determine, by the greater weight of the evidence, that Defendant's truck was not reasonably discernible at the time of the collision, then Jason Tritt was not in violation of Ohio's assured clear distance ahead law when he struck Defendant's truck."

The trial court, however, instructed the jury as follows:

"The law is, a driver must not operate an automobile at a greater speed than will permit him to bring it to a stop, one, within the assured clear distance ahead. The assured clear distance ahead in this case was the difference between the automobile being driven by Jason Tritt and a reasonable discernible object in his path of travel.

"This distance constantly changes, in this case is measured at any moment by the distance between the Tritt vehicle and the limit of Jason Tritt's vision, which may include the range of his headlights.

"A discernible object is a reasonably visible or reasonably observable object.

"An object is discernible when it is visible or can be detected or perceived." (Tr. Vol. V, 507-508.)

Plaintiffs argue that the *McFadden* definition, which defines "discernibility" in terms of a cognitive awareness rather than a merely physiological detection, is crucial to their case and should have been included in jury instructions. Although we apply a fairly strict standard when determining whether specific portions of requested jury instructions were not covered by the charge given, and thus were erroneously omitted, -the instruction requested by plaintiffs was not covered by the charge, even though the charge was a correct statement of law, and the requested instruction should have been included.

The instruction regarding the definition of "discernible," which was given by the trial court,

was not sufficient to explain to the jury the difference between defendant's truck being merely visible and its being discernible. Discernible means cognitive awareness while visible means merely capable of being seen. The relevant statutes, under which the jury was instructed that defendant could have been found liable, see footnote one, premise the utilization of lights and fuses upon the "discernibility" of the vehicle, and thus the discernibility of defendant's truck was a primary focus of defendant's alleged liability. Accordingly, every attempt should have been made to instruct the jury as fully and fairly as possible. The trial court's instruction provides a partial definition which would be sufficient in the absence of a specific request for further instruction. However, that instruction does not set out the distinction recognized in *McFadden,* which similarly involved a moving car which collided with a large object in the road. *McFadden* cited, with apparent approval, language from a Pennsylvania case which contained discussions of Ohio decisions and which stated that "discernibility" connoted a mental perception instead of just a sensory perception. The trial court instruction specifically referred only to the sensory perception.

Under these facts, such a distinction may be crucial to plaintiffs' case. Plaintiffs' substantial rights have been affected by omission of the requested instruction, resulting in prejudice. The trial court should have corrected the omission by inclusion of the *McFadden* charge in the jury instructions. See *Wagenheim v. Alexander Grant & Co.* (1983), 19 Ohio App. 3d 7; and *Ohio Farmers' Ins. Co. v. Cochran* (1922), 104 Ohio St. 427. The fourth assignment of error is well-taken.

By their fifth assignment of error, plaintiffs argue that the trial court abused its discretion by forbidding plaintiffs' expert on vision at low light levels and discernibility, Dr. Abrams, from utilizing a scale model of the accident scene as demonstrative evidence at trial. The model consisted of a rectangular gray board with a black stripe across the center of the board, depicting the road on which the accident occurred. Lane markings on the road were white. Abrams had intended to use magnetized vehicles affixed to the board to illustrate his testimony concerning the discernibility of defendant's truck to plaintiff. Four magnetized plaques defining terms Abrams used in his testimony, *i.e.,* "contrast," "illumination," "conspicuity" and "luminance" were also part of the exhibit.[2]

Admission of demonstrative evidence is generally within the sound discretion of the trial court, in light of all the circumstances in the case. Only when the trial court has abused its discretion in the admission or rejection of such evidence will this court reverse the trial court's decision. *Cincinnati, Hamilton & Dayton Ry. Co. v. De Onzo* (1912), 87 Ohio St. 109. Moreover, Evid. R. 403(a) states that relevant evidence is inadmissible "*** if its probative value is substantially outweighed by the danger of unfair prejudice *** ."

We find that the trial court did not abuse its discretion in excluding the model from being used by Abrams since it contains the same types of deficiency that we found involved in the tail light test conducted by Bookwalter. From the photographs of the exhibit, it appears that the primary impression the jury would have of the accident scene would be very dark, with no brightness other than the small white lines depicting lanes, to alleviate the dark gray. Given the dispute over the visibility and brightness conditions of the accident scene, we agree that, as with Bookwalter's tail light test, the danger of unfair prejudice substantially outweighs any probative value of the exhibit. However, we would also find that if it be within the trial court's discretion to admit the Bookwalter tail-light test, it is an abuse of discretion to exclude the Abrams' testimony using the scale model. It would be unfair to exercise discretion so as to favor one party over another by the admission and exclusion of evidence. The fifth assignment of error is without merit.

Finally, by their sixth assignment of error, plaintiffs contend that the trial court erred by excluding Dr. Abrams' testimony concerning defendant's use of reflective triangles. Plaintiffs' counsel proferred that Abrams was prepared to testify that if defendant had used reflective triangles on the morning of the accident, defendant's truck would have been more discernible.

As set out in footnote one of this opinion, Ohio Adm. Code 4901: 2-5-14, in effect at the time off collision, required a stopped motor vehicle to place lighted fuses and three flares, electric lanterns or red reflectors on the roadway during the times specified in R.C. 4513.03. The language of R.C. 4513.03 regulates lighted lights on vehicles during certain times relevant to sunrise and sunset and to other times "*** when there are unfavorable atmospheric conditions or when there is not sufficient light to render discernible persons, vehicles, and substantial objects on the highway at a distance one thousand feet ahead *** ." Plaintiffs argue that Abrams' testimony was relevant to show the enhanced discernibility of defendant's truck if defendant had used reflectors.

Pursuant to the regulation set out above, defendant's use of, or failure to use, red reflectors was governed by rule. Defendant admitted that no reflectors were used, but the jury apparently did not find this to be negligence. Clearly, the statute requires reflective devices at certain times to make objects and vehicles more discernible. Therefore, we fail to see how the exclusion of Dr. Abrams' testimony in this regard prejudiced plaintiffs. The sixth assignment of error is not well-taken.

Accordingly, the first, second and fourth assignments of error are sustained; the third, fifth and sixth assignments of error are overruled; the judgment is reversed, and this cause is remanded to the Franklin County Common Pleas Court for further proceedings consistent with law and this opinion.

*Judgment reversed and cause remanded.*

McCORMAC and YOUNG, J.J., concur.

---

[1] R.C. 4511.66 prohibits the parking of a vehicle on a road if it is practicable to park the vehicle off the road and requires a clear view of the stopped vehicle for two hundred feet; R.C. 4513.03 requires headlights on vehicles during the time from one-half hour after sunset to one-half hour before sunrise and during other times when atmospheric conditions render objects indiscernible at a distance of one thousand feet; R.C. 4513.10 requires a stopped vehicle, during the times mentioned in R.C. 4513.03, to display a red light visible from five hundred feet to the rear of the vehicle; Ohio Adm. Code 4901:2-5-05 requires a truck to be equipped with one taillight, one stop light and two reflectors, one on each side; former Ohio Adm. Code 4901:2-5-14 required a vehicle stopped on a highway to place fuses, flares or red lanterns around the vehicle during the times specified in R.C. 4513.03.

[2] We note that the model itself was not included in the exhibits filed in this appeal; however, three of plaintiffs' exhibits consist of photographs of the model. (Plaintiffs' Exhibits Nos. 150-152.)