OPINION
{¶ 1} Plaintiff-appellant, Janet M. Jedlicka, appeals the judgment of the Ashtabula County Court of Common Pleas, in which the trial court denied her motion for new trial. For the following reasons, we affirm the decision of the trial court.
 {¶ 2} Substantive and Procedural Facts *Page 2 
 {¶ 3} On February 19, 2003, Janet Jedlicka was driving her 2002 Hyundai Elantra, eastbound in the left lane of I-90, west of the Route 44 interchange. She braked and swerved to avoid an accident with another car that had swerved into her lane, apparently in a fit of road rage. This caused Ms. Jedlicka's car to hit a snow bank and then travel into the path of an oncoming, fully loaded semi tractor-trailer. The force of the impact drove the pillar between the front and rear passenger doors (the "B-pillar") inward and down toward the center of the vehicle. Ms. Jedlicka traversed across the car, and her head and shoulder struck the roof rail, B-pillar, and/or the intruding surface of the truck. Overwhelming evidence indicates she was not wearing a seatbelt. The passenger side airbag did not deploy because it was not designed to deploy in the circumstances of Ms. Jedlicka's accident, i.e. when there is no passenger seated in the passenger seat.
 {¶ 4} Ms. Jedlicka lost consciousness and was taken to the hospital. Upon arrival at the hospital emergency room, she was noted to have a deep occipital laceration, cervical spine tenderness, deformity of the right clavicle, right shoulder tenderness, and abrasions on her right wrist. After a head CT scan, she was diagnosed with a subarachnoid hemorrhage.
 {¶ 5} Ms. Jedlicka filed suit against Hyundai Motor Company, Inc., claiming that a design defect, namely the nondeployment of the passenger side airbag when no passenger was present, deprived her of expected protection in an off-side collision. Prior to trial, Ms. Jedlicka made motions in limine to prohibit testimony of defense expert, Dr. Alfred Bowles, as well as testimony regarding the nonuse of her seatbelt. *Page 3 
Hyundai made a motion in limine to exclude Ms. Jedlicka's expert, Gary Derian. The trial court subsequently denied Ms. Jedlicka's and Hyundai's motions.
 {¶ 6} On October 16, 2007, a jury trial began. During the trial, Ms. Jedlicka presented the testimony of her sole expert, engineer Gary Derian. Mr. Derian opined that the airbag system on Ms. Jedlicka's car was defective because the vehicle did not provide the protection that it could have. Further, he offered the opinion that the design decision not to deploy the passenger's side airbag when the passenger's side of the car was struck was a defect. He also opined that the proximate cause of Ms. Jedlicka's injuries was the lack of airbag deployment.
 {¶ 7} Hyundai presented the testimony of its employee, Steven Johnson, who was not designated as an expert, and the testimony of three engineering experts, one of whom was also a medical doctor. Mr. Johnson testified about the restraint system in the 2002 Elantra and also about the electronic control module ("EMC"), more commonly referred to as the "black box". The EMC monitors certain conditions during collisions and performs diagnostics on the various components of the car, alerting the driver if any circuitry is out of the specification parameters. After the accident, Mr. Johnson inspected the EMC and observed, among other things, that there was no command given to deploy the passenger side airbag, the passenger seat was not occupied, and Ms. Jedlicka's seatbelt was unbuckled.
 {¶ 8} Expert Michael Klima took measurements of Ms. Jedlicka's vehicle as well as an exemplar vehicle to compare measurements and that data, in turn, was utilized by Dr. Alfred Bowles, a medical doctor and a mechanical engineer. Dr. Bowles' testimony concerned the geometry and timing of airbags when deployed. Dr. Bowles used the *Page 4 
measurements collected by Mr. Klima to perform a static airbag deployment test from which he based his conclusions. Dr. Bowles concluded that the passenger side airbag would not have provided Ms. Jedlicka any protection had it deployed in the accident.
 {¶ 9} Jeffrey Pearson completed the defense triumvirate. Mr. Pearson opined that a seat belt is the most effective restraint system today. He also opined that the restraint system on the 2002 Hyundai Elantra was a state of the art system, and the decision to suppress the passenger's side airbag when there was no occupant was an "appropriate application of the appropriate technology." He reasoned that "a reasonable engineer wouldn't have any expectation that that component would provide any potential benefit."
 {¶ 10} After deliberations, the jury returned a unanimous verdict in favor of Hyundai, finding that the airbag system in the 2002 Elantra had not been defectively designed. Ms. Jedlicka made a motion for new trial, pursuant to Civ. R. 59(A), arguing that the judgment was not sustained by the weight of the evidence, was contrary to law, and that error of law occurred at the trial. In addition, Ms. Jedlicka alleged that counsel for Hyundai distorted the evidence and made prejudicial statements during the course of the trial, which disparaged her and resulted in an unfair trial.
 {¶ 11} The trial court disagreed and denied her motion reasoning that "[t]he opinion of Dr. Bowles, which contradicted the expert opinion offered by the Plaintiffs, was admissible, and * * * was not designed or offered as an experiment or recreation of the accident." The court further reasoned that the testimony of Steve Johnson was "factual in nature" and that he "did not express opinions, but rather produced factual testimony, which explained the operation and function of [the EMC]." The court also *Page 5 
found that no defamatory or derogatory statements were made by Hyundai concerning Ms. Jedlicka or Ms. Jedlicka's expert witness. Finally, the trial court found that the "Judgment Entry [was] not contrary to law and that there was no substantial error that adversely effected [sic] the Plaintiffs' rights that occurred during the trial."
 {¶ 12} Ms. Jedlicka timely appeals and raises the following assignments of error:
 {¶ 13} "[1.] The trial court erred in allowing the jury to consider testimony from the defendant-appellee's witness, Dr. Alfred Bowles, as to an out-of-court experiment that was not properly identified and admittedly not a recreation and in direct conflict with the rules of evidence and case law.
 {¶ 14} "[2.] The trial court erred in allowing the testimony of Steve Johnson who did not produce an expert report prior to trial in contravention of local rules and testified as to the function and unchangeable nature of information stored in an EMC that was retrieved from the vehicle over nine months after the accident where no one was produced to establish the whereabouts of the EMC and the conditions which it was subjected to during that nine month period.
 {¶ 15} "[3.] The trial court erred in denying plaintiff appellant's motion for a new trial upon the issues raised above in the first two assignments of error as well as the arguments presented by the defendant-appellee."
 {¶ 16} Expert Testimony and Out-of-Court Experiments
 {¶ 17} "A determination as to the admissibility of an expert's testimony is a matter that is generally within the discretion of a trial judge and will not be disturbed absent an abuse of discretion; however, that discretion is not unlimited." Slaby v. Boyle, 11th Dist. No. 97-A-0086, 1999 Ohio App. LEXIS 2807, at *9, citing Miller v. BikeAthletic Co., *Page 6 80 Ohio St.3d 607, 616, 1998-Ohio-178. "The term `abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Id. at *8-*9 (citation omitted).
 {¶ 18} In her first assignment of error, Ms. Jedlicka contends that the minimum requirements of the rules of evidence have not been satisfied by the trial testimony of Dr. Bowles and his opinion as to the out-of-court experiment, the airbag static deployment test, was not admissible. She further claims that the testimony of Dr. Bowles lacked details as to the theory, design, and implementation of the experiment. Specifically, Ms. Jedlicka claims that Dr. Bowles "did not testify about any seat positions or describe the out-of-court experiment he was `involved' in."
 {¶ 19} Dr. Bowles' demonstration was a series of digital images taken at a high speed or a photographic timeline taken in his lab using an undamaged 2002 Elantra, depicting the deployment of a passenger side airbag. The images were offered to illustrate Dr. Bowles' testimony as to the coverage and timing of the airbag when the passenger seat was unoccupied.
 {¶ 20} The admission of experimental or demonstrative evidence is within the discretion of the trial court. State v. Jackson (1993),86 Ohio App.3d 568, 570 (citations omitted). Thus, a trial court's ruling on demonstrative exhibits is reviewed under the abuse of discretion standard. State v. Herring, 94 Ohio St.3d 246, 255, 2002-Ohio-796
(citation omitted). As previously noted, an abuse of discretion constitutes more than an error of law or judgment and implies that the trial court acted unreasonably, arbitrarily, or unconscionably.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219 (citation omitted). When applying the abuse of discretion standard, a reviewing court may not *Page 7 
simply substitute its judgment for that of the trial court. State exrel. Duncan v. Chippewa Twp. Trustees, 73 Ohio St.3d 728, 732,1995-Ohio-272. Furthermore, Evid. R. 403(A) states that relevant evidence is inadmissible "if its probative value is substantially outweighed by the danger of unfair prejudice."
 {¶ 21} The Static Test Photos
 {¶ 22} Ms. Jedlicka claims that it was not proper for the static airbag test to be presented to the jury because it portrayed different conditions from those of the accident and would thus confuse and mislead the jury. She argues that the present case is similar to Tritt v. Judd'sMoving Storage, Inc. (1990), 62 Ohio App.3d 206. In Tritt, the Tenth District Court of Appeals held that due to "the vastly different circumstances of the out-of-court experiment conducted by the * * * expert, the trial court palpably abused its discretion by admitting testimony of the experiment into evidence since it was patently misleading and confusing because of the marked differences. Furthermore, any possible probative value of the evidence was overwhelmingly outweighed by its prejudicial nature." Id. at 214.
 {¶ 23} The instant case is distinguishable from Tritt. InTritt, the experiment in question was an attempt at a re-creation of the accident conditions. The experiment was conducted to test the visibility of a headlight at the time of the accident. The experiment involved a headlight that was significantly different from the one on the accident vehicle; it was new, not old and scratched. In addition, the month the experiment took place (June) was different than the accident (February), creating different weather and lighting conditions. *Page 8 
 {¶ 24} The Supreme Court of Ohio has held that "[w]hen an out-of-court experiment is not represented to be a reenactment of the accident and deals with one aspect or principle directly related to the cause or result of the occurrence, the conditions of the accident need not be duplicated." Miller, 80 Ohio St.3d 607, at paragraph two of the syllabus. The court further held that under the facts of that case, it was "virtually impossible to recreate the conditions under which appellant sustained his injuries. * * * [I]f [the court] were to hold that a test or experiment must exactly recreate the conditions present at the time an injury was sustained, a plaintiff would rarely be able to overcome an opponent's motion for summary judgment." Id. at 615. The court was "unwilling to require such proof. Instead, * * * [a]ny dissimilarity * * * goes to the weight of the evidence, not to its admissibility." Id. at 615-616.
 {¶ 25} A trial court must first analyze whether the evidence offered by the expert meets the threshold requirements of validity and reliability and "not whether an expert witness's opinion is correct."Ball v. Consol. Rail Corp. (2001), 142 Ohio App.3d 748, 757 (citation omitted). The arguments advanced by Ms. Jedlicka are quite similar to those advanced in the Ball case, where an expert performed an experiment in a controlled chamber and recorded it on videotape in order to determine whether the abrasion of asbestos pipe insulation would release fibers into the air was attacked as an "artificial and inaccurate representation of the conditions encountered" in the trains. Noting the holding in Miller that "[a]n experiment is admissible if it is relevant and helpful to one aspect or principle of the event at issue, even though it does not recreate the conditions of the event," the real issued to be determined by the trial court is "whether the experiment was sufficiently relevant to the events at issue to aid the jury." *Page 9 
Id. at 758 (emphasis added). The court in Ball went on to note, as in Ms. Jedlicka's case, that the record demonstrates that the jury was informed of the differences between the expert's experiment and the conditions experienced in the actual trains; thus the trial court did not abuse its discretion in admitting the evidence and allowing the jury to weigh it. Id.
 {¶ 26} In the instant case, the trial court found that the pictorial timeline used to illustrate Dr. Bowles' testimony was not designed or offered as a re-creation of the accident, it "simply demonstrated how the air bag was deployed, the manner in which it would inflate with air, and the timing between impact and full inflation." We agree.
 {¶ 27} The airbags did not deploy during Ms. Jedlicka's accident, and the jury was well aware of this fact as it was key to the theory of Ms. Jedlicka's case. Ergo, the static airbag deployment test could never be a re-creation of the accident or its conditions and the demonstration could not confuse or mislead the jury. The use of the evidence of the static airbag deployment test was not designed to re-create or replicate the conditions of Ms. Jedlicka's accident; however, it was relevant to rebut the claims made by Ms. Jedlicka's witness that deployment of the passenger side airbag would have saved Ms. Jedlicka from her injuries, and the photos were used to visually illustrate Dr. Bowles' opinion the airbag "would not have provided any protection to [Ms. Jedlicka] in this crash." Dr. Bowles specifically testified that the airbag deployment pictures he created were not meant to be a re-creation of the crash and the original accident would have been "really difficult to replicate" in a lab.
 {¶ 28} We agree with the trial court's assessment of this evidence that dissimilarity goes to weight not admissibility. The evidence was not inherently *Page 10 
misleading to the jury, as the jury was constantly reminded of the theory of Ms. Jedlicka's case through direct examination of her witnesses and cross-examination of defense experts. Moreover, "with the help of cross-examination, the jury could recognize the dissimilarity between the experiment and the mishap." Leichtamer v. Am. MotorsCorp. (1981), 67 Ohio St.2d 456, 473. Thus, we find that the trial court did not abuse its discretion by allowing the testimony of Dr. Bowles.
 {¶ 29} Reliance on Data Produced by Another Expert
 {¶ 30} Ms. Jedlicka further argues that the testimony from Dr. Bowles was unreliable because he "took information from another defense expert, Mr. Klima." This argument is meritless. Dr. Bowles used Mr. Klima's measurements to perform his static airbag deployment test. Evid. R. 703 permits the use of data supplied by another expert as it provides that "[t]he facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by the expert or admitted in evidence at the hearing." It is not disputed that Mr. Klima was qualified to testify as an expert and the measurements done by Mr. Klima and used by Dr. Bowles were admitted into evidence without objection. Dr. Bowles' testimony was based, in part, on his perception of properly admitted evidence which was helpful to the determination of a fact at issue.
 {¶ 31} Ms. Jedlicka's first assignment of error is without merit.
 {¶ 32} Testimony Relating to the Electronic Control Module
 {¶ 33} In her second assignment of error, Ms. Jedlicka contends that the testimony of Steve Johnson, who testified regarding the information stored in Ms. Jedlicka's EMC, was improperly admitted. Ms. Jedlicka argues that Mr. Johnson offered opinions even though he was not to be considered an expert witness because *Page 11 
the defense did not file an expert witness report as required by the local rules. Further, she claims his testimony was not reliable because his observation about the EMC occurred approximately nine months after the accident.
 {¶ 34} As previously discussed, Mr. Johnson, a Hyundai employee, testified about the EMC located in Ms. Jedlicka's car. Since an expert report was not provided, Mr. Johnson was not permitted to testify as an expert witness. During direct examination he explained the operation of the EMC and the scan tool used to obtain readings from the EMC, and he reported the data obtained from the EMC. The trial court held that Mr. Johnson's testimony "was not opinion testimony, but was factual testimony given by an employee of Hyundai, who was familiar with this module and could explain its operation to the Jury." More precisely, we find that Mr. Johnson's testimony contained both factual testimony and admissible lay opinion.
 {¶ 35} Under Evid. R. 701, "[i]f the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue."
 {¶ 36} Ms. Jedlicka specifically objects to Mr. Johnson's testimony about "what the control module did," his "opinion" it was a trustworthy device, and his statement that the "module was `unalterable' based on his `familiarity' with company documents."
 {¶ 37} Hyundai asserts that Mr. Johnson's testimony about the readings obtained from the EMC is "analogous to a witness testifying that she observed the temperature displayed by a thermometer or the color of a traffic light." His testimony, describing the *Page 12 
inner workings or operation of the EMC, based on his familiarity with the module, does not render the testimony expert opinion testimony. When asked if the EMC could be altered or erased, Mr. Johnson replied, "[n]o. And it's even stated in the spec. Without destroying the module, it cannot be erased using any tool I have available." This is not expert opinion testimony, but proper lay opinion testimony under Evid. R. 701. This testimony is a proper "opinion or inference" which was "rationally based on [Mr. Johnson's] perception" of the EMC itself, which was properly admitted into evidence, and the EMC specifications, also admitted into evidence by the defense without objection.
 {¶ 38} "[A] discernible distinction cannot always be made between `fact' and `opinion.'" Tomlinson v. Cincinnati (1983), 4 Ohio St.3d 66,68. Thus, "[w]itness testimony in the form of opinion is not subject to a per se rule of exclusion." Id. (emphasis sic); Markus, Trial Handbook for Ohio Lawyers (2008), Section 25.2. McCormick describes Evid. R. 701 as not one of exclusion but "one of preference. The more concrete description is preferred to the more abstract." 1 McCormick, Evidence (5 Ed. 1999) 47-48, Section 11.
 {¶ 39} Mr. Johnson had firsthand knowledge of the operation of the EMC and its specifications and his testimony was helpful to the determination of a fact in issue. His testimony related to the facts about the operation of the EMC and mixed fact and opinion based upon a permissible factual inference that data could not be altered or erased, as documented in the specifications, without destroying the module.
 {¶ 40} The fact that the EMC was not retrieved until nine months after the accident in and of itself does not render the testimony inadmissible. Mr. Johnson *Page 13 
testified that the EMC showed no signs of contamination or damage. This observation was not challenged and the EMC itself was ultimately admitted into evidence over an unexplained objection. No contrary evidence was presented to rebut the evidence and the inferences there from as to the trustworthiness of the data retrieved from the EMC. The trial court did not abuse its discretion in allowing his testimony.
 {¶ 41} Ms. Jedlicka's second assignment of error is without merit.
 {¶ 42} Motion for New Trial
 {¶ 43} In her final assignment of error, Ms. Jedlicka first contends that the trial court erred in denying her motion for new trial based upon the issues raised in her other assignments of error. Since the trial court did not err in the admission of the testimony and evidence, the first portion of her assignment of error is without merit.
 {¶ 44} Ms. Jedlicka next asserts that Hyundai's counsel misrepresented the evidence to the jury and expressed personal opinions in his closing argument. She reasons that in the closing argument, the "defense sought to represent the testimony of Mr. Johnson as an expert and the out-of-court experiment of Dr. Bowles as a recreation" and that the "closing argument was in opposition to arguments made previously as to the testimony of witnesses." After reviewing the record, the trial court found that "[t]he Plaintiff has taken isolated comments out of context and those isolated comments concerned fair comment on the evidence in this case." We agree.
 {¶ 45} "Great latitude is afforded counsel in the presentation of closing argument to the jury. Included within the bounds of permissible argument are references to the uncontradicted nature of the evidence presented by the advocate." Pang v. Minch (1990), 53 Ohio St.3d 186, at paragraph two of the syllabus. A closing argument must *Page 14 
be reviewed in its entirety to determine whether prejudicial effect occurred. State v. Frazier, 73 Ohio St.3d 323, 342, 1995-Ohio-235, reversed in part, on other grounds, by Frazier v. Huffman (C.A.6 2003),343 F.3d 780. "The assessment of whether these bounds have been exceeded is, in the first instance, a discretionary function to be performed by the trial court." Pang, 53 Ohio St.3d at 194 (citations omitted). "Such determination will not be reversed on appeal absent an abuse of discretion." Id.
 {¶ 46} Ms. Jedlicka's counsel did not object during closing argument. Therefore, we must review these assignments of error under a plain error analysis. "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and * * * timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent from the context." Evid. R. 103(A)(1). "Failure to object to evidence at trial constitutes a waiver of any challenge to the evidence on appeal." State v. Robertson (1993), 90 Ohio App.3d 715, 728. Thus, Ms. Jedlicka has waived all but plain error on this issue. She contends that "[statements were made that were misleading, irrelevant[,] and expressed personal opinions which were all prejudicial and amounted to plain error." We disagree.
 {¶ 47} In order for the plain error doctrine to apply, there must be a deviation from a legal rule, the error must be an obvious defect in the trial, and the error must affect a substantial right. State v.Barnes, 94 Ohio St.3d 21, 27, 2002-Ohio-68 (citation omitted). Under the plain error standard, an appellant must demonstrate that the outcome of the trial would clearly have been different but for the errors alleged.State v. *Page 15 Waddell, 75 Ohio St.3d 163, 166, 1996-Ohio-100, citing State v.Moreland (1990), 50 Ohio St.3d 58, 63.
 {¶ 48} The Supreme Court of Ohio has held "in appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." Goldfuss v. Davidson, 79 Ohio St.3d 116, 122-123,1997-Ohio-401. After reviewing the closing argument in its entirety, we cannot say that the argument was so patently outside of the bounds of fair comment or argument that it had a substantial prejudicial effect significant enough to constitute plain error. Additionally, Ms. Jedlicka has failed to demonstrate that the outcome at trial would "clearly have been different" but for the errors that she alleges. Waddell,75 Ohio St.3d at 166 (citation omitted).
 {¶ 49} Ms. Jedlicka argues that Hyundai's counsel spoke of the EMC and its attributes even though there was no testimony regarding these characteristics at trial. Specifically, Hyundai's counsel stated that the EMC is "subject to significant (sic) regimen of electrical tests before it reads out"; the EMC "tests the sensors * * * continuously as per the specifications and records any faults"; the EMC was "A-OK" before the crash; the EMC information is "permanently recorded"; and the "light on the dash would tell you if the system was not working properly." These statements do not seriously affect the "basic fairness, integrity, or public reputation of the judicial process." Goldfuss,79 Ohio St.3d at 123. Mr. Johnson testified that the EMC did not show any signs of damage or contamination when he first saw it. He further testified that when he *Page 16 
retrieved the diagnostic codes stored in the EMC, the screen read "no trouble code." Mr. Johnson testified that reading meant that "[t]here's no diagnostic out of specification condition detected by the control." The EMC screens were photographed and the photos and the EMC itself were entered into evidence. The jury could draw their own conclusions about the reliability and condition of the EMC from the exhibits.
 {¶ 50} Ms. Jedlicka further argues that Hyundai counsel's statement to the jury that "Dr. Bowles testified that the head portion of the bag will not inflate to protect the head area" was also improper. This statement echoes Dr. Bowles's lay testimony that the side air bag "would not have provided any protection to [Ms. Jedlicka] in this crash" and is therefore not the kind of statement the plain error rule is meant to remedy.
 {¶ 51} Ms. Jedlicka additionally asserts that in the closing argument, Hyundai counsel's statement that her injuries were not "physically that severe" and that she has no "internal injuries," "and that it was only due to her `good fortune' and `good design' that she is `still with us'" were flagrant examples of prohibited and prejudicial statements. This assertion is without merit. Witness testimony as well as pictures, entered into the record as exhibits, demonstrate the severity of Ms. Jedlicka's crash. Hyundai counsel's assertions do not achieve the exceptional prejudicial effect to warrant application of the plain error doctrine.
 {¶ 52} Ms. Jedlicka additionally contends that the trial court was required to intervene sua sponte to nullify the effects of the statements. Such a duty, however, arises only when counsel's "gross and abusive conduct" or statements have a prejudicial affect. Pesek v. Univ.Neurologists Assn., Inc., 87 Ohio St.3d 495, 501, 2000-Ohio-483
(citations omitted). Hyundai counsel's statements in closing argument *Page 17 
were neither gross nor abusive as to require the trial court to sua sponte intervene. Accordingly, Ms. Jedlicka's argument is unpersuasive.
 {¶ 53} Ms. Jedlicka's third assignment of error is without merit.
 {¶ 54} For the foregoing reasons, the judgment entry of the Ashtabula County Court of Common Pleas, denying Ms. Jedlicka's motion for a new trial, is affirmed.
CYNTHIA WESTCOTT RICE, J., concurs,
 COLLEEN MARY OTOOLE, J., concurs in judgment only. *Page 1