**MOORE, Exr., Appellant,**

v.

**RETTER, Appellee.**

[Cite as *Moore v. Retter* (1991), 72 Ohio App.3d 167.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–728.

Decided Jan. 15, 1991.

168

*Paxton & Associates* and *Robert C. Paxton II,* for appellant.

*Jacobson, Maynard, Tuschman & Kalur Co., L.P.A., Richard W. Stuhr, Daniel J. White* and *Karen L. Clouse,* for appellee.

STRAUSBAUGH, Judge.

This is an appeal by plaintiff from a judgment of the Franklin County Court of Common Pleas following a unanimous jury verdict in favor of defendant.

The record indicates that, in July 1985, plaintiff, Sterling Moore, executor of the estate of Freda M. Brumfield, initiated an action seeking both compensatory and punitive damages based upon the allegations that Brumfield suffered a wrongful death as a result of medical negligence on the part of defendant, Richard H. Retter, M.D. Brumfield died on April 17, 1984, as a result of ingestion of multiple drugs taken in greater than therapeutic quantities. An autopsy, which concluded that the cause of death was cardiopulmonary arrest secondary to multiple drug ingestion, revealed the following drugs in decedent's system: acetaminophen, meprobamate, caffeine, codeine, and ethclorvynol ("Placidyl"). All the drugs were found at a level consistent with high therapeutic range except for Placidyl, which was consistent with lethal administration.

Brumfield first sought treatment from defendant in November 1977, following an automobile accident. Brumfield suffered from a cervical injury at that time. On November 21, 1977, defendant performed surgery on Brumfield to correct the injury sustained in the automobile accident.

Following the surgery, Brumfield experienced significant neck and upper back pain and continued to seek treatment from defendant until the time of her death in April 1984. Following her initial surgery, Brumfield's treatment consisted of medications to alleviate her complaints, including the drug Placidyl, which was prescribed for insomnia due to continued neck pain.

Brumfield's family doctor, Dr. Byron Blake, testified at trial that Brumfield had a long history of depression and sleep disturbances. Dr. Blake treated Brumfield from November 1969 through February 1976. Among the drugs prescribed by Dr. Blake for these problems was Placidyl, which was first prescribed by Dr. Blake on September 7, 1972.

At trial, plaintiff contended that Brumfield accidentally overdosed on the medications prescribed by defendant and that, but for defendant's negligent prescription of these medications, Brumfield would not have died on April 17, 1984. Defendant's position was that he was not responsible for Brumfield's death inasmuch as the prescriptions were in keeping with the appropriate standard of care and, furthermore, that Brumfield's death may have been suicide rather than accidental.

On April 3, 1989, the case came on for a trial by a jury, which returned a unanimous verdict in favor of defendant; plaintiff now appeals from that

judgment, setting forth the following ten assignments of error for review by this court:

"1. When a trial court knows, or becomes aware, that a party to a civil suit has perjured himself, a court must take action to remedy the situation in order that the trier of fact is not presented with evidence which the court and all counsel know is untrue.

"2. The trial court erred in refusing to permit appellant to recall defendant on cross-examination in appellant's case in chief.

"3. The trial court committed prejudicial error in failing to permit appellant to call appellee on rebuttal.

"4. The trial court erred in refusing to admit into evidence appellant's Trial Exhibit G and in failing to permit appellant to examine appellee regarding the said exhibit, the Gray Drug print-out and the standard of care.

"5. The trial court erred in limiting the scope of testimony of Dr. Seymour Ehrenpreis regarding the proper dosages and effects of Placidyl.

"6. The trial court committed prejudicial error in permitting the testimony of Dr. Phillip Watson with respect to the appropriate standard of care.

"7. The trial court erred in instructing the jury on punitive damages.

"8. The trial court erred in failing to instruct the jury that there was a rebuttable presumption that plaintiff's decedent died of an accidental death.

"9. The trial court erred in admitting into evidence appellee's Exhibits 1, 2, 4, 5, 6, 11, 12 and 14.

"10. The trial court erred in refusing to grant appellant a new trial."

■ Plaintiff's first and fourth assignments of error are interrelated and will be addressed together. Under the first assignment of error, plaintiff alleges that defendant perjured himself at trial regarding his knowledge of the prescriptions which took the life of decedent and that the trial court, although aware of such perjury, failed to take action to remedy the situation. Plaintiff argues that for the three-year period of time that the present litigation was pending in the court of common pleas, defendant never took the position that he did not prescribe the Placidyl in question until his discovery deposition in 1988. At trial, defendant denied that he placed in his office chart the prescription in question and also denied that the notation was in his handwriting.

Plaintiff asserts that throughout the course of the trial, and even after defendant rested his case, plaintiff attempted to bring the truth out with respect to what defendant actually did which caused decedent's death. Plaintiff contends that the court did not allow the jury to hear all the facts

concerning the cause of death of Brumfield and that it was error by the trial court not to permit the truth to come out at trial.

In support of his fourth assignment of error, plaintiff asserts that the trial court erred in refusing to admit into evidence plaintiff's Trial Exhibit G, the Gray Drug printout, and that the trial court implicitly precluded plaintiff from fully addressing the issue of standard of care with defendant. Plaintiff argues that during the trial, defendant put on no evidence that any other physician was treating decedent during the several years before she died and that the court's precluding cross-examination of defendant in these areas was prejudicial to plaintiff's case.

In response, defendant asserts that the trial court did not abuse its discretion in excluding plaintiff's Exhibit G and in precluding further cross-examination of defendant concerning that exhibit. Concerning the three prescriptions introduced by plaintiff as Exhibit G, defendant maintains that an exclusion of the evidence by the trial court was appropriate inasmuch as plaintiff produced at trial for the first time documents which were properly requested during discovery but not provided to opposing counsel. Defendant argues that despite his diligent efforts to obtain full discovery prior to trial, surprise evidence appeared at trial and the trial court appropriately excluded that evidence.

Furthermore, defendant maintains that if the trial court erred in excluding this evidence, that exclusion was harmless error because, at trial, defendant accepted the responsibility for the prescription of Placidyl. Defendant asserts that the practical effect of defendant's acceptance of responsibility for the prescription accomplishes the same goal for plaintiff as defendant's admission that he actually wrote the prescription and that once defendant accepted responsibility for that prescription of Placidyl, it became totally immaterial who had written all the information contained on that prescription slip. Defendant further maintains that the jury verdict in favor of defendant was not predicated upon the court's exclusion of this evidence but was based upon the failure of plaintiff to convince the jury that defendant had deviated from accepted standards of medical practice and had proximately caused decedent's death.

Defendant argues that plaintiff's allegation that defendant knowingly wrote the Placidyl prescription and then denied under oath having done so is completely false and that a quoted passage contained in plaintiff's brief is an attempt to misrepresent to this court the substance of that side-bar conference. Defendant asserts that at no time did he admit writing all the information contained on that prescription slip.

We agree with the contention of the defendant that there was no abuse of discretion on the part of the trial court and that, even if there were, such error was not prejudicial. See *Smith v. Flesher* (1967), 12 Ohio St.2d 107, 41 O.O.2d 412, 233 N.E.2d 137 ("In order to support reversal of a judgment, the record must show affirmatively not only that error intervened but that such error was to the prejudice of the party seeking such reversal."); *McQueen v. Goldey* (1984), 20 Ohio App.3d 41, 44, 20 OBR 44, 46, 484 N.E.2d 712, 716 (In order to constitute reversible error, error must affect substantial rights of complaining party, or substantial justice will not have been done.). Plaintiff's first and fourth assignments of error are overruled.

■ Plaintiff's second and third assignments of error will be considered together. Under the second assignment of error, plaintiff asserts that the trial court erred in refusing to permit plaintiff to recall defendant on cross-examination in plaintiff's case-in-chief. Plaintiff notes that, at trial, when the court would not permit counsel to inquire of defendant regarding certain prescriptions labeled Exhibit G, the court and defense counsel agreed, off the record, that the issue could be raised at a later time. Plaintiff maintains that when he had finished cross-examining defendant, it was understood that plaintiff would have another opportunity to cross-examine defendant later. Plaintiff notes that the record indicates that an attempt was made to reserve this right to further cross-examination. Plaintiff further notes that defendant did not take the stand in his own defense even though it was assumed by the court and plaintiff's counsel that he would, thereby precluding a second opportunity for cross-examination.

Plaintiff maintains that in addition to attempting to recall defendant to inquire about the actual prescriptions which he wrote, plaintiff also requested defendant to identify a Gray Drug computer printout. Plaintiff argues that at this point in the trial, defendant's counsel misrepresented to the court that he had not been provided with the Gray Drug printout prior to trial. Plaintiff asserts that due to this misrepresentation, plaintiff was precluded from questioning defendant regarding his prescribing a total of eight hundred thirty tablets of Placidyl to decedent over a nine-month period of time.

■ Under the third assignment of error, plaintiff asserts that the trial court committed prejudicial error in failing to permit plaintiff to call defendant on rebuttal. Again, plaintiff contends that it was assumed that defendant would take the witness stand in his own defense. When this did not occur, plaintiff argues, he again attempted to call defendant as a rebuttal witness but was overruled by the trial court. Plaintiff alleges that such action constituted an abuse of discretion by the trial court.

A review of the record indicates that plaintiff sought to requestion defendant on subjects which had either been covered or could have been covered in the previous cross-examination, and were therefore not appropriate rebuttal testimony and may have been cumulative evidence. A party upon whom the affirmative of an issue rests is bound to give all his evidence in support of the issue in the first instance, and can only give such evidence in reply as tends to rebut the new matter introduced by his opponent. *Potts v. First–Central Trust Co.* (App.1940), 37 Ohio Law Abs. 382, 386, 47 N.E.2d 823, 826.

Likewise, cross-examination as to the Gray Drug printout would not have been to rebut testimony presented by the defense, since this issue was not addressed. In any event, there appears to have been no clear abuse of discretion by the trial court. Plaintiff's second and third assignments of error are overruled.

Under the fifth assignment of error, plaintiff asserts that the trial court erred in limiting the scope of testimony of Dr. Seymour Ehrenpreis regarding the proper dosages and effects of Placidyl. Plaintiff notes that Dr. Ehrenpreis, a professor of pharmacology at the Chicago Medical School, was called as an expert witness for plaintiff. Plaintiff's brief lists a number of questions which the witness was precluded from answering by the trial court. Plaintiff asserts that none of the questions proffered on the record and to the witness sought an opinion with respect to standard of care. Plaintiff maintains that precluding Dr. Ehrenpreis' testimony was prejudicial error to plaintiff's case.

We find that the trial court properly precluded plaintiff's witness, Dr. Seymour Ehrenpreis, from testifying as to the standard of care in the prescription of Placidyl. The witness had already offered testimony as to some of the matters contained in the list of questions. Also, many of the questions would have required an expert opinion on the standard-of-care question. Dr. Ehrenpreis is not a medical doctor but is rather a professor of pharmacology.

█ Opinions concerning the standard of care may be expressed only by persons licensed to practice medicine, osteopathic medicine or podiatry, who spend seventy-five percent of their professional time in the active clinical practice or teaching of medicine, and are knowledgeable in the field of specialty at issue in the case. R.C. 2743.43; *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673. Dr. Ehrenpreis holds no such license and has never treated patients. Since Dr. Ehrenpreis could meet none of these qualifications, his testimony on standard-of-care issues was properly excluded.

■ Additionally, plaintiff presented the testimony of Dr. Jerome Katz, a medical doctor specializing in psychiatry. Questions concerning the standard of care were questions properly directed to Dr. Katz. Therefore, we find that plaintiff was not prejudiced by being prevented from introducing this cumulative testimony from Dr. Ehrenpreis. Plaintiff's fifth assignment of error is overruled.

■ Under the sixth assignment of error, plaintiff asserts that the trial court committed prejudicial error in permitting the testimony of Dr. Phillip Walson with respect to the appropriate standard of care. Plaintiff contends that Dr. Walson's standard of care was based on his discussion with two or three pharmacists in Columbus, Ohio, and that the witness' standard of care was not the standard of care of a reasonable practicing physician.

We find that Dr. Walson is qualified to testify as to the standard of care, under R.C. 2743.43 and Evid.R. 702. Dr. Walson understood that the standard of care was not defined on the basis of what he or any other individual physician may or may not do in the care of a particular patient, but, rather, what the reasonably prudent physician would do. Dr. Walson based his opinion upon his independent knowledge of the generally accepted practices for the prescription of Placidyl and had confirmed those opinions by speaking to two or three pharmacists as to their observations of prescriptions written for Placidyl. Plaintiff's sixth assignment of error is overruled.

■ Under the seventh assignment of error, plaintiff asserts that the trial court erred in instructing the jury on punitive damages. Plaintiff cites the deposition testimony of defendant, in which he stated that it would be "stupid" to have prescribed one hundred Placidyl tablets and that prescribing that much Placidyl "fell below the standard of care." Plaintiff argues that, as defendant changed his testimony at trial and lied regarding his actual knowledge of this prescription, the issue of punitive damages should have been submitted to the trier of fact.

The Supreme Court has recently defined the term "actual malice" to be " * * * (1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, *or* (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm." (Emphasis *sic*.) *Preston v. Murty* (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus.

In this case we find that there was no evidence in the record to create an issue of fact for the jury as to either of these standards. There was no testimony to suggest that defendant acted with a spirit of hatred or ill will toward decedent. Furthermore, none of the witnesses at trial, including

plaintiff's experts, testified that the final prescription of Placidyl was anything more than negligence. Plaintiff's seventh assignment of error is overruled.

■ Under the eighth assignment of error, plaintiff asserts that the trial court erred in failing to instruct the jury that there was a rebuttable presumption that decedent died an accidental death. Plaintiff maintains that the testimony of the Franklin County Coroner, Dr. William R. Adrion, declared decedent's death to be accidental. Plaintiff further maintains that defendant's expert, Dr. Walson, admitted that the decedent's death could have been an accidental overdose. Plaintiff asserts that, based upon this testimony, it was error for the trial court not to have instructed the jury that there existed a rebuttable presumption that decedent died of an accidental overdose of Placidyl.

We find that plaintiff was not entitled to such jury instruction. The plaintiff submitted to the court a jury instruction which would have advised the jury that the coroner's report as to the manner and cause of death created a rebuttable presumption on those issues in the absence of competent, credible evidence to the contrary. The court noted the correct statement of the law, which is to the effect that if such a nonbinding, rebuttable presumption is in fact rebutted by competent, credible evidence, then the presumption disappears and the jury is not instructed concerning the presumption. See, *e.g.*, *Adamson v. May Co.* (1982), 8 Ohio App.3d 266, 270, 8 OBR 358, 456 N.E.2d 1212, 1216–1217 ("If one party relies on a presumption and his adversary introduces evidence of a substantial nature which counterbalances the presumption, it disappears."). In the present case, defendant introduced evidence to rebut the presumption of accidental death by means of extensive testimony concerning decedent's depression arising from her allegations of physical and verbal abuse by her husband and other members of her family. The evidence submitted by defendant tended to show that decedent's death was consistent with suicide rather than an accidental death, thereby rebutting the presumption based upon the coroner's report. Plaintiff's eighth assignment of error is overruled.

■ Under the ninth assignment of error, plaintiff asserts that the trial court erred in admitting into evidence defendant's Exhibits 1, 2, 4, 5, 6, 11, 12, and 14. Plaintiff contends that these records contain hearsay upon hearsay statements. Plaintiff argues that whether decedent had suicidal tendencies is not proven by the record and may not be offered for the truth in the matter asserted therein.

We find that defendant's Exhibits 2, 4, 5, 6, 11, 12, 14, and 16 were all appropriately admitted by the trial court. Exhibit 2, a police investigation

report concerning decedent's death, and Exhibit 6, the coroner's report, were both admissible pursuant to Evid.R. 803(8). Both were generated by the respective agencies in the course of their duty to investigate decedent's death and as such were admissible.

Exhibits 4, 5, and 12 were medical records concerning decedent's care and treatment at various treatment facilities. The trial court correctly ruled that they were admissible based upon exceptions to the hearsay rule under Evid.R. 803(4) and 804(B)(5) and because experts on both sides had relied upon these records in formulating their opinions.

Exhibits 11 and 14 consist of summary sheets concerning prescriptions. The court was correct in holding that the handwritten notes of the physicians were difficult to read and could not be conveniently examined by the jury. The summary sheets served to assist the jury in its deliberations and were admissible.

Exhibit 16 consisted of decedent's employment records and was offered to rebut plaintiff's claim for economic loss and to impeach the testimony of decedent's husband that decedent had earned $10,000 to $12,000 per year and, as such, was admissible.

Plaintiff's ninth assignment of error is overruled.

Under the tenth assignment of error, plaintiff asserts that the trial court erred in refusing to grant plaintiff a new trial. Under this assignment of error, plaintiff again reiterates that it was an abuse of discretion not to permit plaintiff to cross-examine defendant with respect to Exhibit G, the Gray Drug printout, and regarding the standard of care.

This assignment of error is a reiteration of plaintiff's first four assignments of error, which have previously been overruled. For that reason, we overrule the tenth assignment of error. All assignments of error having been overruled, we affirm the judgment of the trial court.

*Judgment affirmed.*

REILLY, P.J., and KERN, J., concur.

LILLIAN M. KERN, J., retired, of the Montgomery County Court of Common Pleas, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.