BALL et al., Appellees,

v.

CONSOLIDATED RAIL CORPORATION et al., Appellants.

[Cite as *Ball v. Consol. Rail Corp.* (2001), 142 Ohio App.3d 748.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 77531.

Decided May 10, 2001.

750

*Dorian & Murphy, LLP, Brian A. Goldstein* and *Michael H. Doran,* for appellees.

*Burns, White & Hickton* and *David A. Damico,* for appellants.

ANNE L. KILBANE, Judge.

This is an appeal from a jury verdict following trial before Visiting Judge Harry A. Hanna that resulted in the award of compensatory damages to appellees Jack Ball and William Winland for asbestos-related personal injury claims, and from an order denying appellant Consolidated Rail Corporation and American Financial Group, Inc. (collectively, Conrail ) a new trial. Ball and Winland brought this action under the Federal Employers' Liability Act ("FELA"), Section 51 *et seq.*, Title 45, U.S.Code, and the Locomotive Boiler Inspection Act ("LBIA"), Section 22 *et seq.*, Title 45, U.S.Code, claiming asbestos exposure in Conrail's buildings and trains. Conrail claims it was error (1) to admit portions of an asbestos survey report revealing the presence of asbestos in the air of certain areas of its property but refuse to admit the complete report revealing where asbestos was not found or, when found, below permissible limits; (2) to admit unreliable scientific evidence; (3) to allow prejudicial reference to asbestos as a carcinogen even though cancer was not at issue; and (4) to fail to instruct the jury to apportion damages in relation to each plaintiff's contributory negligence, as required by FELA. We reverse the judgment.

On September 1, 1998, Ball, Winland, and six other plaintiffs filed a complaint against Conrail and its predecessors, alleging asbestos-related injuries in violation of the FELA, the LBIA, other federal statutes, and common-law negligence. On Conrail's motion, and over the plaintiffs' objections, the case was transferred to the common pleas court's asbestos docket.

A jury trial began on September 20, 1999, with six of the original eight plaintiffs remaining, and after four plaintiffs agreed to settlements on September 21, 1999, the trial continued on only the claims of Ball and Winland. Ball, then age sixty-four, testified that he had worked for Conrail or its predecessors from 1953 until 1993, initially as a laborer in a storage building and, since 1964, as a train conductor. He testified that he had been regularly exposed to asbestos materials while working in the storage job and, later, exposed to asbestos insulation while riding in train engines or cabooses. Winland, fifty-eight years old at the time of trial, worked as a conductor for the railroad from 1965 until 1987. Both men testified that they spent significant time in buildings at the Conway train yard near Pittsburgh, Pennsylvania, and, while riding in the trains, they would rest their feet on boiler pipes wrapped with insulation, and that the insulation was regularly frayed. Ball testified that he recognized that the insulation contained asbestos, and not some other material, because he had seen labeled materials and had learned to recognize asbestos while working in the storage building.

Over Conrail's objection, the judge admitted a number of documents offered to show the presence of asbestos fibers in the air of buildings at the Conway yard where Ball and Winland had worked, as evidence of their exposure to asbestos. The documents were part of a report prepared in 1988, subsequent to an asbestos survey and inspection by Professional Service Industries ("PSI"), a Pittsburgh company. Although offered as business records, the judge admitted them as admissions against interest on the basis that PSI was Conrail's agent when it inspected and reported on asbestos at the Conway facility. Through the use of these PSI documents, Ball and Winland's medical witnesses established their asbestos exposure and, therefore, a diagnosis that each suffered from asbestosis. The physicians testified that both men suffered from lung fibrosis consistent with asbestos exposure, but neither could have made such a diagnosis without evidence that each had, in fact, been exposed.

The judge also admitted, over Conrail's objection, evidence of an experiment by William Longo, Ph.D., through which he attempted to recreate the conditions encountered by Ball and Winland when they rested their feet on insulated boiler pipes while riding trains, to show that such activity could release asbestos fibers into the air. Conrail argued that Longo's methods were not scientifically sound, did not adequately approximate the conditions encountered by Ball and Winland, or should be excluded as evidence of the amount of asbestos fiber released during the experiment.

Conrail also objected to evidence of historical knowledge concerning asbestos as a carcinogen, arguing that it was irrelevant or unduly prejudicial because neither man suffered from cancer or sought damages for the fear or risk of contracting cancer. The judge allowed the evidence to show that Conrail had notice of asbestos's health hazards and, therefore, had the duty to take steps to protect its employees. Although Conrail argued that this evidence could be presented without reference to asbestos as a carcinogen, the judge ruled the evidence admissible because the severity of the risk would affect the scope of Conrail's duty.

In defense, Conrail elicited or presented evidence that Ball and Winland had significant histories of cigarette smoking, and all the medical witnesses agreed that their major symptoms—shortness of breath—could be caused by smoking. Conrail's medical witnesses testified that smoking could cause lung fibrosis, although they found no significant damage to either man's lungs. Larry Liukonen, an industrial hygienist, testified, *inter alia*, that asbestos insulation was not used on boiler pipes inside the locomotives and that such pipes were not insulated at all. Conrail also attempted to admit, through Liukonen, more of the documents from the PSI report concerning the absence of asbestos in the buildings at the Conway train yard because Ball and Winland had introduced only selected

documents from that comprehensive report, and that the remainder of the report was necessary to place the asbestos information in context. The judge, however, rejected that evidence as hearsay.

In accordance with the FELA claims, Conrail requested a jury instruction on apportionment of damages, but the judge rejected it, finding that Conrail did not present any evidence that Ball or Winland were contributorily negligent. The judge found that Conrail's witnesses had opined only that Ball and Winland did not have asbestosis and, although they stated that smoking can cause shortness of breath or lung fibrosis, no one had testified that smoking had caused Ball and Winland to have such conditions. The judge did approve an instruction stating that Conrail was liable only for the injuries proximately caused by its negligence or statutory violations.

On September 30, 1999, the jury returned a verdict finding Conrail liable to Ball for $275,000, and to Winland for $395,000, and that Conrail violated the LBIA. On October 5, 1999, judgment was entered on the verdict, and Conrail moved for a new trial under Civ.R. 59, citing the judge's failure to admit the entire PSI report and his failure to instruct the jury on apportionment of damages. Its motion was denied on December 21, 1999.

Conrail's first assignment of error states:

"I. The trial court erred in failing to instruct the jury on apportionment of damages under the FELA and to include apportionment on the verdict slip."

The FELA allows workers to recover if an employers' negligence or statutory violation contributed in any way to their injuries. *Rogers v. Missouri Pacific RR. Co.* (1957), 352 U.S. 500, 506, 77 S.Ct. 443, 448, 1 L.Ed.2d 493, 499. The statute also requires a parallel apportionment of damages whenever the evidence shows a worker's contributory negligence caused any part of his injuries. *Dixon v. Penn Cent. Co.* (C.A.6, 1973), 481 F.2d 833, 835. Apportionment is not allowed, however, where an employer is liable for violating certain safety statutes, including the Locomotive Boiler Inspection Act ("LBIA"). *Rogers*, 352 U.S. at 506, 77 S.Ct. at 448, 1 L.Ed.2d at 499, fn. 12. Because the jury found an LBIA violation, Conrail was not entitled to apportionment for contributory negligence, and the asserted error is necessarily harmless. Conrail contends that the error was prejudicial because the jury might have apportioned damages if instructed to do so, despite the LBIA violation, but we fail to see how the apportionment instruction could have affected the jury's determination of liability under the LBIA. The first assignment of error is without merit.

The second assignment of error states:

"II. The trial court erred in admitting portions of an asbestos survey report used by plaintiffs during their case in chief as an 'admission against interest' and

in further failing to permit defendants from introducing the remaining portions of the exact same report."

 A judge has discretion when deciding close evidentiary questions, and we will not reverse evidentiary rulings unless there was an abuse of that discretion. *Calderon v. Sharkey* (1982), 70 Ohio St.2d 218, 222–223, 24 O.O.3d 322, 324–325, 436 N.E.2d 1008, 1012. The documents showing airborne asbestos fiber at the Conway yard were admitted as admissions of a party-opponent. Evid.R. 801(D)(2).

The exhibits were introduced during the video deposition of Conrail industrial hygienist Ramon Thomas. Thomas did not begin work at Conrail until 1994, and the documents at issue were produced in 1988 and 1989. He testified that he had never seen the documents before, although they were kept in his department's offices, and that Conrail's lawyer, and not he, had compiled the documents to be presented at his deposition. He identified them as part of a report prepared by PSI, not by Conrail, relating to the presence of asbestos in buildings at the Conway yard.

The documents were forms, dated November 1988, identifying locations where asbestos was found and a cover letter, dated January 1989, from PSI to Conrail summarizing the findings. The judge admitted them as statements by an agent of Conrail over Conrail's objection that no evidence showed PSI prepared the report as its agent.

 The parties initially raise a question concerning whether the statements are admissions or "statements against interest" under Evid.R. 804(B)(3). Putting aside the question of witness availability, if the evidence concerns a party, it is governed by Evid.R. 801(D)(2). *State v. Gatewood* (1984), 15 Ohio App.3d 14, 16, 15 OBR 36, 37–38, 472 N.E.2d 63, 64–65. Unless it can be attributed to Conrail, the evidence is irrelevant, and therefore Evid.R. 804 is inapplicable.

Second, although Ball and Winland originally argued that the documents were admissible as records of regularly conducted activity, Evid.R. 803(6), they successfully excluded the remainder of the report. If the documents were admissible under this exception, Conrail would be entitled to a reversal because denying it the right to submit the complete report would be error. Moreover, had the judge ruled the documents admissible as business records, Conrail would have had an opportunity to further oppose the documents as double hearsay under Evid.R. 805. We can therefore affirm the judgment only if the documents were admissions of a party-opponent under Evid.R. 801(D)(2).

If a statement is not a direct admission, it can still be the admission of a party-opponent and not hearsay under three circumstances relevant here: (1) the party has manifested his adoption or belief in its truth, (2) the party authorized the

declarant to make the statement, or (3) the statement was made by an agent or servant in the course of the employment or agency relation. Thomas did not know whether Conrail had taken action to remove asbestos or otherwise remedy conditions identified in the report, and there was no other evidence that Conrail had adopted the report as its own. Evid.R. 801(D)(2)(b). To be admissible, the documents must satisfy the authorization or agency requirements in Evid.R. 801(D)(2)(c) or (d).

Where admission through agency is alleged, one must show the existence of an agency relationship, and that the statement was made during the course of the relationship and was within the scope of the agency. *Pappas v. Middle Earth Condominium Assn.* (C.A.2, 1992), 963 F.2d 534, 537. For purposes of the evidentiary rule, an agency relationship does not require authority to make damaging statements but requires only the authority to take action concerning the subject matter of the statements. *Id.* at 538. In keeping with the liberal policy of admitting statements under Evid.R. 801(D)(2), the fact and scope of the agency can be proven through circumstantial evidence. *Id.* Moreover, despite the *Pappas* court's statement to the contrary, Fed.R.Evid. 801(d)(2) was subsequently amended to allow consideration of a statement's content in order to show authorization or agency. See Weissenberger's Ohio Evidence (2000) 327–328, Chapter 801. We are unaware that any Ohio court has ruled on this issue since the federal amendment, and the parties have pointed to no cases in aid of our determination. The content of the documents at issue supports the conclusion that PSI was hired to do asbestos inspections by Conrail and authorized to report on their results, and in the absence of contrary argument or authority, we cannot find that the judge would have abused his discretion in considering the contents of the statements.

Even when the contents of the reports are used, however, there is no evidence of an agency or employment relationship between Conrail and PSI. It appears that PSI was an independent contractor without power to bind Conrail, and such relationships do not satisfy the requirements of Evid.R. 801(D)(2)(d). *Forte v. Lewis* (1978), 241 Ga. 109, 243 S.E.2d 38; *Gottlieb & Sons, Inc. v. Hanover Ins. Co.* (Apr. 21, 1994), Cuyahoga App. No. 64559, unreported, 1994 WL 144539; cf. *Szymczak v. Midwest Premium Fin. Co.* (1984), 19 Ohio App.3d 173, 177–178, 19 OBR 280, 284–286, 483 N.E.2d 851, 857–858. A principal's control of the relationship provides the basis for attributing the statement of an agent as an admission, and such control is absent in an independent-contractor relationship. *Forte.*

The documents can be admissible under Evid.R. 801(D)(2)(c) if PSI is a party authorized by Conrail to make a statement on the subject of asbestos. Historically, however, this form of admission is construed more narrowly than the

agency exclusion, as the declarant must be someone authorized to act as a "speaking agent" for the principal, expressly or implicitly designated to make statements on that party's behalf. See, e.g., *Covington v. Sawyer* (1983), 9 Ohio App.3d 40, 43–44, 9 OBR 43, 45–47, 458 N.E.2d 465, 469 (physician implicitly authorized to discuss patient's symptoms when referring her to specialist); *Madden v. Albainy* (Apr. 20, 1989), Cuyahoga App. No. 55301, unreported, 1989 WL 43596 (law firm expressly authorized to write letter on client's behalf); *Lockwood v. AC&S, Inc.* (1987), 109 Wash.2d 235, 262, 744 P.2d 605, 620. Although the evidence here shows that PSI was hired to investigate and report on asbestos content at the Conway yard, this does not mean that it was authorized to make statements to third parties on Conrail's behalf. There is no evidence that Conrail was willing to adopt PSI's reports as its own without further investigation.

Because we find that the documents were improperly admitted as admissions of a party-opponent, we need not address Conrail's argument that it was entitled to admission of the entire report under Evid.R. 106. We note, however, that our opinion does not entirely forbid admission of the documents on remand. We find only that, on the foundation shown, the documents were not admissible under any of the hearsay exclusions in Evid.R. 801(D)(2). Conrail's second assignment of error is sustained.

The third assignment of error states:

"III. The trial court erred in denying defendants' motion *in limine* to exclude the testimony of plaintiffs' expert, Dr. William Longo, and the videotape of his experiment on the ground that said evidence did not comply with Rule 702 of the Ohio Rules of Evidence."

Because it does not appear that application of Ohio evidentiary rules will affect a substantive federal right, and because Ball and Winland have not objected to application of Ohio law, we will accept the proposition that Evid.R. 702 applies, rather than its federal counterpart. We also recognize that this may be a distinction without a difference, for even though the language of the two evidentiary rules differ, the Ohio Supreme Court, in *Miller v. Bike Athletic Co.* (1998), 80 Ohio St.3d 607, 687 N.E.2d 735, expressly adopted the leading federal case on the issue, *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469.

 The judge's role is preliminary, analyzing whether the expert evidence satisfies threshold requirements of validity and reliability, and not whether an expert witness's opinion is correct. *Miller*, 80 Ohio St.3d at 613–614, 687 N.E.2d at 741. Conrail submits that, under *Miller*, Dr. Longo's experiment did not satisfy *Daubert*'s nonexhaustive, four-factor test for reliability. Under this

test, scientific evidence should be analyzed to determine (1) whether the theory or technique has been tested, (2) whether it has been subjected to peer review, (3) whether there is a known or potential rate of error, and (4) whether the methodology has gained general acceptance. *Id.* at 611, 687 N.E.2d at 740.

Dr. Longo testified that he performed the experiment, recorded on videotape, in a controlled chamber to determine whether the abrasion of asbestos pipe insulation would release fibers into the air. Two persons rubbed their shoes across insulated pipe, as Ball and Winland testified they had done and, occasionally, one person would touch the pipe with his hands because Ball and Winland had told Longo that they had sometimes touched the boiler pipes with their hands to adjust the position of the insulation. Longo then measured the amount of fibers released.

Conrail does not question Longo's methods for measuring airborne fibers but instead attacks his experiment as an artificial and inaccurate representation of the conditions encountered by Ball and Winland in its trains. Despite the fact that Longo stated that his experiment was designed to determine only whether manipulation of the asbestos insulation could lead to *any* exposure to asbestos fibers, Conrail contends that the experiment had no value to the jury without a showing of the level of exposure. Conrail then submits that Longo improperly testified about the levels of asbestos fibers released during his experiment.

An experiment is admissible if it is relevant and helpful to one "aspect or principle" of the event at issue, even though it does not recreate the conditions of the event. *Miller*, paragraph two of the syllabus. Ball and Winland did not assert that Dr. Longo's experiment was a full reenactment of conditions on locomotives, but instead limited the scope to determination of whether asbestos fibers could be released. if some conditions they had described had occurred. Despite Conrail's arguments about the reliability of Dr. Longo's experiment, the crux of its dispute is whether the experiment was sufficiently relevant to the events at issue to aid the jury. The record indicates that the jury was amply informed about the differences between Dr. Longo's experiment and the conditions Ball and Winland may have experienced, and the judge did not abuse his discretion in admitting the evidence and allowing the jury to weigh it. *Id.* at 614–615, 687 N.E.2d at 742.

We agree, however, that the experiment was not designed to show the level of asbestos exposure allegedly encountered by Ball and Winland and Dr. Longo should not have been allowed to testify concerning the amounts of asbestos released during the experiment. The testimony about these levels and the reference to them in closing argument was outside the express purpose of the

experiment and beyond the permissible scope of testimony. Conrail's third assignment of error is, in part, well taken.

The fourth assignment of error states:

"IV. The trial court erred in admitting testimony regarding the risk of developing cancer when exposed to asbestos where there was no evidence to suggest that plaintiffs would develop cancer."

Although the judge initially granted Conrail's motion *in limine* on this issue, he reversed the ruling at trial and allowed testimony that asbestos was a carcinogen. Because Ball and Winland claimed only to have asbestosis and did not request damages for increased risk of cancer or fear of contracting cancer, Conrail contends that evidence that asbestos was a known carcinogen was irrelevant or unduly prejudicial and should have been excluded under Evid.R. 402 or 403.

At trial, Ball and Winland sought to establish that Conrail knew of asbestos's hazards prior to or during the time of their employment, and, to prove that Conrail had a higher duty to take protective action, introduced the cancer-asbestos relationship. The judge was within his discretion in finding the evidence relevant for this purpose. See, *e.g.*, *Aparicio v. Norfolk & W. Ry. Co.* (C.A.6, 1996), 84 F.3d 803, 810 (duty is measured in proportion to danger posed). Because Ball and Winland did not claim injury or damages related to cancer, the judge instructed the jury to award damages only for those injuries caused by Conrail, Conrail did not request any further limiting instruction, and there is no evidence the jury awarded damages for the risk or fear of cancer. We cannot find that the judge abused his discretion in finding that the probative value of the evidence was not substantially outweighed by its prejudicial effect. Evid.R. 403(A); *Aparicio*. The fourth assignment of error is overruled.

*Judgment reversed*
*and cause remanded.*

PATRICIA ANN BLACKMON, P.J., and FRANK D. CELEBREZZE, JR., J., concur.

ON RECONSIDERATION

JOURNAL ENTRY

Decided May 10, 2001

*Per Curiam.*

Plaintiffs-appellees Jack Ball and William Winland request a reconsideration of our opinion reversing and remanding this action. They maintain that we

mistakenly found that certain documents were improperly admitted at trial, that even if wrongly admitted the error was harmless, and that we incorrectly found error in the admission of expert testimony concerning asbestos exposure. We deny the motion.

■ The jury's finding that appellant Conrail violated the Locomotive Boiler Inspection Act ("LBIA"), Section 22 *et seq.*, Title 45, U.S.Code, does not render evidence concerning asbestos content at the Conway yard harmless. The physician's diagnoses had to be supported by evidence of asbestos exposure—a diagnosis that a patient's symptoms are consistent with asbestosis is not the same as concluding that the symptoms are caused by asbestosis. The documents supported Bell's and Winland's testimony of asbestos exposure, and documents reflecting airborne asbestos in Conway buildings were not harmless error.

■ Ball and Winland now contend that the documents at issue were admissible as adoptive admissions under Evid.R. 801(D)(2)(b). We first note that the submission of additional documents in a motion for reconsideration is not permitted because we review only the record that was available to the trial judge. *Lamar v. Marbury* (1982), 69 Ohio St.2d 274, 277, 23 O.O.3d 269, 271, 431 N.E.2d 1028, 1030–1031. Moreover, although Ball and Winland now argue that certain documents admitted at trial show Conrail's adoption of the documents' content, that argument was never discussed until this court mentioned it in passing in our opinion. We will not reconsider our decision based on this belated argument but instead leave the issue for resolution on remand, if necessary.

They next contend that Dr. Longo's experiment not only properly revealed the fact of asbestos exposure in a locomotive but, additionally, the amounts of asbestos released. While it was designed only to show the fact of exposure, and not the level, they claim that the measurements were relevant because the experiment was intended to test for "measurable" exposure, and such measurable exposure could not be proved without introducing evidence of the actual measurement. We disagree.

Consistent with their prior argument, Ball and Winland next contend that it would have been misleading not to report the amounts of asbestos released in Dr. Longo's experiment, apparently suggesting that the jury might have reached conclusions even more damning to Conrail if the amounts were excluded. This decision is not ours to make. We determined that Conrail's objection was well founded, and, beyond determining that the error was not harmless, we will not comment on the objection's strategic value.

Ball and Winland also admit, in another portion of their argument, that the asbestos measurements were a vital part of Dr. Longo's experiment and claim that the measurements should have been admitted because the differences

between the experiment and their actual experiences were in evidence and went to the weight of the evidence, not its admissibility. We do not agree.

█ Finally, Ball and Winland claim that Conrail did not object to references made during closing argument about asbestos measurements in Dr. Longo's experiment. We disagree because Conrail properly objected to the introduction of the evidence, and those objections were overruled. There is no need to renew an objection at closing when the evidence has already been admitted.

Motion is denied.

*Motion denied.*

PATRICIA ANN BLACKMON, P.J., ANN KILBANE and FRANK D. CELEBREZZE, JR., JJ., concur.