JOURNAL ENTRY AND OPINION
{¶ 1} Defendant, Garlock Sealing Technologies ("the manufacturer"), appeals the jury trial verdict in favor of plaintiff, Kathleen Blandford, who sued both in her individual capacity and as the representative of the estate of her late husband, Clyde Blandford, ("the pipe fitter").
 {¶ 2} The pipe fitter had been employed as a pipe fitter for thirty-nine years. From 1965 until 1971, the pipe fitter's job entailed servicing pipes for a plumber. In the course of his work, he primarily serviced high pressure steam lines by removing and replacing gaskets and packing manufactured by the manufacturer. These gaskets consist of up to 85% asbestos. In November 2000, the pipe fitter died of mesothelioma, a rare cancer caused only by asbestos.
 {¶ 3} Plaintiff sued several defendants in connection with her husband's death, including the manufacturer and The Edward R. Hart Company, an insulation supplier. All defendants except the manufacturer and Hart settled with plaintiff prior to trial. Hart then moved for a separate trial, which motion the trial court granted. The manufacturer did not object to the order for separate trials until the day of trial.
 {¶ 4} After both parties completed their cases in chief, plaintiff moved for permission to present rebuttal evidence. The trial court, over the manufacturer's objection, permitted limited rebuttal testimony which included a video tape showing the dust raised by a pipe fitter removing an asbestos gasket. This video showed a journeyman pipe fitter with thirty years of experience removing a gasket. The video used a scientific form of lighting called "Tyndall lighting," which allows the viewer to see particles not visible to the naked eye under normal circumstances.
 {¶ 5} The jury returned an award to plaintiff in the amount of $6.4 million. The manufacturer moved for JNOV or a new trial, which motions the trial court denied. After the manufacturer appealed, this court granted the trial court the authority to issue a nunc pro tunc order for setoffs against all the amounts plaintiff had received from the settling defendants. The award was then reduced to $5,634,041.40.
 {¶ 6} The manufacturer states three assignments of error, and plaintiff states one cross assignment of error. For its first assignment of error, the manufacturer states:
I. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT ALLOWED A NEW EXPERT, WHO HAD PREVIOUSLY BEEN WITHDRAWN, TO TESTIFY ON REBUTTAL REOPENING THE PLAINTIFF'S CASE IN CHIEF DURING THIS REBUTTAL TESTIMONY.
 {¶ 7} The manufacturer alleges that it was unduly biased by the plaintiff's introduction of expert testimony from an expert who had not been included on the plaintiff's witness list because it did not receive the expert's report and because he testified to matters its experts had not had an opportunity to address in their testimony. We agree.
 {¶ 8} Following the completion of the manufacturer's case, plaintiff moved to be permitted to rebut the manufacturer's expert witnesses pursuant to R.C. 2315.01(A)(4). Over the manufacturer's objection, the court granted this motion. Plaintiff then presented the testimony of Dr. Longo, an expert who had not submitted an expert report and who, although originally on plaintiff's witness list, was removed from the list following a ruling by this court in Ball v. Consol. Rail Corp.
(2001), 142 Ohio App.3d 748, in which we held that Dr. Longo's testimony in Ball concerning experiments he had conducted for asbestos cases was not admissible evidence.
 {¶ 9} Plaintiff claimed that the rebuttal testimony was necessary because the manufacturer's experts had testified that their fiber release studies showed that the pipe fitter's exposure to asbestos from the gaskets was not significant. The manufacturer, citing Ball, objected to the admission of this testimony. The trial court ruled that the experts could express an opinion and discuss the studies they relied on in reaching that opinion, but they were not permitted to give quantitative measurements of the amount of asbestos released during the studies. At the end of the case, however, the court allowed the plaintiff to present an expert and video, to rebut this testimony with quantitative measurements.
 {¶ 10} The manufacturer first objects that Dr. Longo's testimony violated Loc.R. 21.1, which governs the use of expert witnesses in Cuyahoga County Common Pleas Court. The rule states in pertinent part:
Since Ohio Civil Rule 16 authorizes the Court to require counsel to exchange the reports of * * * expert witnesses expected to be called by each party, each counsel shall exchange with all other counsel written reports of * * * expert witnesses expected to testify in advance of the trial. * * *
A party may not call an expert witness to testify unless a written report has been procured from the witness and provided to opposing counsel. * * * [U]nless good cause is shown, all supplemental reports must be supplied no later than thirty (30) days prior to trial. The report of an expert must reflect his opinions as to each issue on which the expert will testify. An expert will not be permitted to testify or provide opinions on issues not raised in his report.
All experts must submit reports. * * *
 {¶ 11} The manufacturer further asserts that Loc.R. 21.1 applies equally to experts called on rebuttal and to experts presented in plaintiff's case in chief. Dolan v. ClevelandBuilders (June 17, 1993), Cuyahoga App. No. 62711, 1993 Ohio App. LEXIS 3080; Jarvis v. Witter, Cuyahoga App. No. 84128,2004-Ohio-6628, ¶ 55. In the case at bar, the plaintiff never supplied the manufacturer with a report from Dr. Longo.
 {¶ 12} The plaintiff counters that the courts handling asbestos cases have amended this rule to permit a party to file either an expert report or prior testimony of the witness. Plaintiff attached an unauthenticated copy of this specialized rule to her appellee brief. The rule says: "No expert witness will be permitted to testify whose report or prior testimony was not served within the time prescribed by the applicable Case Management Schedule except as provided by Local Rule 21.1." See Section H of appendix one to appellee's brief. The plaintiff argues that the rule was satisfied when she submitted prior testimony of Dr. Longo to the manufacturer early in the case. The copy the plaintiff provided of the special rule, however, in addition to being unauthenticated, is labeled as a "proposed case management order." We have nothing before us to show that this order was ever adopted by the trial court. It does not appear on the docket.
 {¶ 13} Our standard of review concerning the trial court's ruling on a Loc.R. 21.1 question is abuse of discretion. Prestonv. Kaiser (Nov. 8, 2001), Cuyahoga App. No. 78972, 2001 Ohio App. LEXIS 4988, at *11, citing Nakoff v. Fairview Gen. Hosp.
(1996), 75 Ohio St.3d 254. An abuse of discretion involves a result which is so grossly and palpably violative of logic and fact that it shows not an exercise of will but rather a perversity of will, a defiance of judgment, and an exercise of passion or bias instead of reason. Huffman v. Hair Surgeon,Inc. (1985), 19 Ohio St.3d 83, 87, citing State v. Jenkins
(1984), 15 Ohio St.3d 164, 222.
 {¶ 14} "The primary purpose of Loc.R. 21 is to avoid prejudicial surprise resulting from noncompliance with the report requirement." Preston v. Kaiser, supra, citing Reese v. EuclidCleaning Contrs., Inc. (1995), 103 Ohio App.3d 141, 147.
 {¶ 15} This court has further explained how to evaluate surprise: A court is not required to prohibit the witness testimony where there is no evidence appellant was prejudiced by the admission of the testimony. * * * The determination of whether the testimony results in a surprise at trial is a matter left to the sound discretion of the trial court. * * * In the absence of surprise, there is no abuse of discretion. * * * "This court has also found that when a complaining party knows the identity of the other party's expert, the subject of his expertise and the general nature of his testimony, a party cannot complain that they are ambushed. Kalina v. Sagen,
1992 Ohio App. LEXIS 1598, *17-18 (Mar. 25, 1992), Cuyahoga App. No. 59761, unreported." Cherovsky v. St. Luke's Hosp. Of Cleveland
(Dec. 14, 1995), Cuyahoga App. No. 68326, unreported. Yaegerv. Fairview General Hospital (Mar. 11, 1999), Cuyahoga App. No. 72361, 1999 Ohio App. LEXIS 904, at *23, internal citations omitted.
 {¶ 16} The plaintiff argues that the manufacturer was aware of the contents of the video because the manufacturer had filed a motion in limine asking the court to bar the video. Additionally, the plaintiff argues that the manufacturer had notice of Dr. Longo, because he was originally on plaintiff's witness list and was removed only later. This argument ignores the prejudice to the manufacturer in the timing of Dr. Longo's testimony and the video, which was presented for the first time on rebuttal. Even if the manufacturer were aware of the film, the manufacturer did not have Dr. Longo's testimony on the video, which quite dramatically illustrated Dr. Longo's analysis of asbestos exposure. It was not until immediately before the witness testified in the trial that the manufacturer had the opportunity to depose the surprise witness. Only in Hollywood films are lawyers able to draw upon, perhaps from the mind of Zeus, the kind of technical information and understanding a lawyer would need to properly depose an expert witness on such a specialized subject involving specific measurements.
 {¶ 17} The plaintiff further argued that the firm representing the manufacturer had deposed Dr. Longo numerous times, but not in this case. This argument is not persuasive, because the specific counsel representing the manufacturer in the case at bar had never deposed Dr. Longo.
 {¶ 18} Second, the manufacturer did not have time to respond to this powerful and very damaging video. The purpose of discovery is to allow each side to prepare its case, in part, in response to the anticipated case of the opposition. By allowing the plaintiff to present this forceful video just before closing arguments and without opportunity to present evidence to challenge the video, the court seriously hampered the manufacturer's defense. Although, theoretically, the manufacturer could have recalled its experts so they could respond to the contents of the video and Dr. Longo's interpretation, logistically, it is not reasonable to expect a defendant to provide such a solution. Litigants should be able to rely on the rules. It is neither economically nor practically feasible to expect that a party can recall out-of-state experts, who have busy schedules of their own, a week or more after they testified. Even if the manufacturer had recalled its experts for surrebbutal, its scurried, rushed attempt to undo the damage done by the video would be far less effective than a case prepared in anticipation of the presentation of the video. We conclude that the very timing of the presentation of the video at the end of the evidence in the case prejudiced the manufacturer.
 {¶ 19} Under this assignment of error, the manufacturer raises another legal issue. It argues that plaintiff may not present evidence in rebuttal which should have been part of its case in chief. As this court noted in Seaford v. NorfolkSouthern Ry (2004), 159 Ohio App.3d 374, ¶ 51:
As one court noted, "The purpose of a rebuttal witness is to `explain, refute or disprove new facts introduced into evidence by the adverse party[.]' State v. McNeill (1998),83 Ohio St.3d 438, 446, 1998 Ohio 293, 700 N.E.2d 596. The testimony of a rebuttal witness is only relevant to challenge the evidence introduced by the opponent, and the scope of this testimony is limited to such evidence. Id." State v. Hunt, Summit App. No. 21515, 2003-Ohio-6120, at ¶ 23.
The failure of a party to present evidence in its case in chief is not an excuse to present that evidence on rebuttal.
The party with the burden of proof on an issue must present such proof in that party's case in chief, and can present such evidence in rebuttal only to answer a new matter introduced by his adversary. * * * Any relaxation of this rule is at the discretion of the trial court. * * * An appellate court will not interfere with the discretion of the trial court in refusing to permit a plaintiff to offer as rebuttal evidence what should have been offered as evidence in chief. * * * However, a party has an unconditional right to present rebuttal evidence on matters which are first addressed in the opponent's case in chief and should not be brought in the rebutting party's case in chief.
 {¶ 20} Hinkle v. Cleveland Clinic Foundation,159 Ohio App.3d 351, 2004-Ohio-6853, ¶ 60, internal citations omitted. See, also, Phung v. Waste Management (1994), 71 Ohio St.3d 408,410; Moore v. Retter (1991), 72 Ohio App.3d 167, 174 ("A party upon whom the affirmative of an issue rests is bound to give all his evidence in support of the issue in the first instance, and can only give such evidence in reply as tends to rebut the new matter introduced by his opponent").
 {¶ 21} Plaintiff denies any prejudice, because the manufacturer presented, in its case in chief, experts who testified on the identical subject matter as Dr. Longo, that is, the release of asbestos fibers from gaskets when they are removed from pipes. Although the subject matter was the same, Dr. Longo was unique in providing numerical values. At the trial, Dr. Longo, over the the manufacturer's objection, stated that the dust released in the video was "probably about seventy to eighty percent asbestos * * *." Tr. at 1317. The manufacturer's experts, on the other hand, stated the amount of the asbestos released was not "substantive"; they were prevented from giving numerical values for the amount of asbestos released in their studies. Nor were they permitted to explain what the percentage of particles released was equivalent to, for example, on the average city street. The plaintiff's expert, on the other hand, not only stated that the amount of asbestos was significant and harmful, but also provided specific numbers to quantify that exposure, as well as a video to illustrate it. His testimony was prejudicially misleading, therefore, because the jury had no framework in which to analyze this number to determine whether this percentage of airborne asbestos was considered a hazardous level. If Dr. Longo's testimony had been presented in plaintiff's case in chief, as it should have been, the manufacturer's experts would have been prepared to address the contents of the video.
 {¶ 22} If it were otherwise admissible, Dr. Longo's testimony should have been presented in plaintiff's case in chief. Because the manufacturer was prejudiced by its introduction in rebuttal testimony, the trial court erred in allowing the rebuttal testimony. Accordingly, this assignment of error has merit.
 {¶ 23} For its second assignment of error, the manufacturer states:
II. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT PROHIBITED GARLOCK'S EXPERTS FROM TESTIFYING REGARDING DATA ON FIBER RELEASE.
 {¶ 24} The manufacturer claims that the trial court "gutted" its defense when the court limited its expert's testimony concerning the results of the manufacturer's studies of airborne asbestos release from gaskets. The manufacturer claims that by prohibiting it from giving the jury the numerical values for airborne asbestos in its studies, the court prevented the jury from comparing safe levels of asbestos with dangerous ones. It argues that this information is admissible under Evid.R. 401 concerning relevant evidence. The rule defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
 {¶ 25} The manufacturer argues that the trial court misinterpreted this appellate court's holding in Ball, supra, in which we ruled that testimony concerning the amount of asbestos released in an experiment was inadmissible because "the experiment was not designed to show the level of asbestos exposure allegedly encountered by [plaintiff] and [the experts] should not have been allowed to testify concerning the amounts of asbestos released during the experiment." We further explained: "The testimony about these levels and the reference to them in closing argument was outside the express purpose of the experiment and beyond the permissible scope of testimony." Id. at 758-759.
 {¶ 26} In contrast, the study which Mr. Liukonen, the manufacturer's expert witness, discussed in his testimony in the case at bar was designed to measure the level of asbestos fibers generally released when pipe fitters remove and replace gaskets. The study was performed in 1978 at the Bremerton, Washington Naval Regional Medical Center and is titled "Asbestos Exposure from Gasket Operations." Liukonen was one of three researchers who conducted this study, which showed that the removal of gaskets from pipes did not release dangerous levels of airborne, respirable asbestos. The study contains numerical values for the minuscule amounts of asbestos which became airborne during various activities involving gaskets.
 {¶ 27} This difference is not, however, dispositive of the issue. "When an out-of-court experiment is not represented to be a reenactment of the accident and deals with one aspect or principle directly related to the cause or result of the occurrence, the conditions of the accident need not be duplicated." Miller v. Bike Athletic Co. (1988),80 Ohio St.3d 607, paragraph two of the syllabus. For the study to be admissible to show whether asbestos fibers were released in a gasket change, Liukonen did not need, therefore, to recreate the exact conditions the pipe fitter experienced in his job. Any differences between the study and the actual condition under consideration, however, must be acknowledged and cannot be used in a way that misleads the jury.
 {¶ 28} The section of the study which most closely reproduced the conditions the pipe fitter experienced examined the amount of airborne asbestos released during "Removal and Concurrent Installation" of a gasket. This section used 28 samples obtained under the following "housekeeping" conditions: the use of "high-efficiency vacuum cleaners (Portvacs)" "to clean areas; placing waste materials in sealed containers; keeping the area clean and free of debris accumulation"; storing "materials sealed in impermeable polyethylene bags." Bremerton Study, at 4. It is not known, however, whether any of these housekeeping measures were used when the pipe fitter was removing gaskets.
 {¶ 29} Further, the Bremerton Study does not quantify the percentage of asbestos contained in the gaskets analyzed, so it is not possible to compare the amount that would have been released from the manufacturer's gaskets the pipe fitter handled. Finally, there is no evidence that the conditions to which the gaskets in the Bremerton Study were exposed were the same conditions in the case at bar.
 {¶ 30} The Bremerton Study, therefore, cannot be used to predict the amount of asbestos the pipe fitter in the case at bar was exposed to in his activities removing and replacing gaskets.
 {¶ 31} The trial court did not err, therefore, in barring testimony concerning the values obtained in the Bremerton Study. Accordingly, this assignment of error is overruled.
 {¶ 32} For its third assignment of error, the manufacturer states:
III. THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT SEVERED THE CLAIMS AGAINST HART.
 {¶ 33} The manufacturer states that it was prejudiced when the court granted co-defendant's "Motion to Continue Trials and/or Sever the Edward R. Hart Company," filed September 19, 2003 by The Edward R. Hart Company. The manufacturer concedes that it did not oppose this motion, which was filed nearly two months prior to trial, but it argues that it preserved the issue for appeal because it relied on the plaintiff's opposition motion. Specifically, the manufacturer argues for the first time on appeal that it did not file a motion in opposition, because the case management order instructs the parties to "attempt to avoid the filing of repetitive motions."
 {¶ 34} While we acknowledge that the asbestos court is unique in its subject matter and procedures, we are powerless to consider rules which parties claim exist but which they do not provide to us. We must, therefore, proceed according to the law as we know it. From the record before us, we find that the manufacturer did not file any opposition to Hart's motion to sever.
 {¶ 35} The manufacturer claims, moreover, that it orally preserved the issue for appeal when it orally "renewed" the motion to rejoin Hart on the day of trial. Moving on the day of trial to rejoin a party who was severed two months prior to trial must certainly result in either a denial of the motion, unfair joinder of an unprepared party who had previously been severed, or a delay in the trial at great cost to all the parties who have gathered their expert witnesses and cleared their calendars for trial. Given those effects, the trial court was within its rights to insist on proceeding with trial. The case management order for this case is not a part of the record provided on appeal to this court. "`An appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.'" Bank One Dayton, N.A. v. Ellington (1995),105 Ohio App.3d 13, 17, quoting State v. Williams (1977),51 Ohio St.2d 112, 116, 364 N.E.2d 1364, vacated on other grounds (1978),438 U.S. 911. By waiting until the day of trial to object to Hart's absence as a defendant, the manufacturer failed to timely raise the issue. To accommodate the manufacturer's request, the court would have had to either postpone the trial or greatly prejudice Hart by ordering it to participate in a trial for which it was not prepared.
 {¶ 36} Further, the manufacturer fails to show that the trial court erred when it ordered the separate trial. Civ.R. 21 states: "Misjoinder of parties is not ground for dismissal of an action.
 {¶ 37} Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately."
 {¶ 38} The manufacturer argues that by severing the claim against Hart, the trial court forced the manufacturer, which was only one of numerous defendants, "to defend the case in a vacuum," which focused all attention on the manufacturer and created an inaccurate picture of the pipe fitter's exposure to asbestos. In fact, the manufacturer argues the pipe fitter was only exposed to the manufacturer's "gaskets for a brief part of his lengthy career as a pipe fitter. * * * [T]he jury was given a completely distorted picture of the pipe fitter's exposure and was not permitted to access liability against Hart on the appropriate verdict form." Appellant's Brief at 24.
 {¶ 39} Because this case is being remanded for a new trial at which time the manufacturer will have a new opportunity to move for joinder of the two trials, the issue is moot.
 {¶ 40} CROSS-APPEAL
 {¶ 41} For her cross-assignment of error, plaintiff states: IV. THE TRIAL COURT ERRED IN AWARDING GARLOCK AN AUTOMATIC SETOFF FOR FUNDS PLAINTIFF RECEIVED FROM SETTLING DEFENDANTS WITHOUT A BASIS FOR FINDING THAT THOSE PARTIES WERE "LIABLE IN TORT."
 {¶ 42} Plaintiff argues that the trial court erred in setting off the amount she received in settlement from the manufacturer's co-defendants. She points to the Ohio Supreme Court's ruling inFidelholtz v. Peller (1998), 81 Ohio St.3d 197, in which the Court interpreted the former R.C. 2307.33(F).[1] The Court held that a defendant in a tort case is entitled to set off its damages payment against any settlement amount the plaintiff received from a settling co-defendant "where there is a determination that the settling co-defendant is a person `liable in tort.' A person is `liable in tort' when he or she acted tortiously and thereby caused harm. The determination may be a jury finding, a judicial adjudication, stipulations of the parties, or the release language itself." Id. at 203. Moreover, as the Second Appellate District noted, "a settlement is not itself an admission of liability." In re Miamisburg TrainDerailment Litig. (1999), 132 Ohio App.3d 571, 585. Plaintiff argues that because the settling parties did not admit liability when they settled, they cannot be classified as "liable in tort" and their payments are not appropriately considered for set off.
 {¶ 43} The record before us, however, does not contain the settlement documents between the plaintiff and the settling co-defendants.[2] We have no way of determining, therefore, whether there was a stipulation of liability between plaintiff and a particular co-defendant, or whether any of the releases contained language concerning liability of the defendant.
 {¶ 44} As a practical matter, however, in light of our reversing the jury verdict, we decline to address this issue.
Judgment reversed and case remanded for new trial.
This cause is remanded.
It is, therefore, ordered that appellants recover of appellee their costs herein taxed.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Cooney, P.J., and McMonagle, J., concur.
[1] The Ohio Legislature has repealed this statute concerning comparative negligence and replaced it with R.C. 2307.22. The Note to the new statute reads:
The provisions of § 3 of SB 120 (149 v — ) read as follows:
SECTION 3. Sections * * * 2307.011, 2307.22, 2307.23, 2307.24,2307.25, 2307.26, 2307.27, 2307.28, 2307.29, * * * of the Revised Code, as amended or enacted, by this act, apply only to causes of action that accrue on or after the effective date of this act. Any cause of action that accrues prior to the effective date of this act is governed by the law in effect when the cause of action accrued.
The statute was enacted in 2003 and this case was filed in 2001. The new statute does not, therefore, apply to this case.
[2] In its reply brief, the manufacturer refers the court to an order, allegedly issued by the trial judge, which says that all settling defendants are adjudicated to be liable in tort, and that if plaintiff wishes to dispute this decision, she should request a hearing as directed by the court. Although the manufacturer attaches a copy of this order to its reply brief, this copy is not authenticated and the order is not included in the stipulated record provided by the parties.